IN RE the MARRIAGE OF:

Victoria JOCIUS (n/k/a/ Fleming), Petitioner-Respondent,

v.

Mark JOCIUS, Respondent-Appellant.

Court of Appeals

*No. 96–2746. Submitted on briefs January 7, 1998.—Decided March 31, 1998.*

(Also reported in 580 N.W.2d 708.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *William A. Pangman* of *Law Offices of William A. Pangman*, of Waukesha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Julie L. Cabou*, of Milwaukee.

A guardian ad litem brief was submitted by *Hazel J. Washington* of *Washington Law Offices*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J. Mark Jocius appeals the trial court's order, following a hearing, that denied him any periods of physical placement with his three children, permanently prohibited him from petitioning for any change in physical placement rights, and changed the children's surnames to Fleming. Mark argues that the trial court's order is unconstitutional and, additionally, that the trial court lacked the statutory authority to make a prospective order and to change the children's surnames. He urges us to declare the entire order void and remand for a new hearing. We agree with Mark that the trial court exceeded its statutory authority in making a prospective physical placement order regarding the children and in changing the names of the children. We reverse these portions of the order and remand this matter to the trial court to amend the order consistent with this opinion. We decline to void the entire order as the appellant has not supplied us with a transcript of the proceedings and, without it, we are unable to ascertain whether the trial court erroneously exercised its discretion. Because of our decision, we do not address the constitutional argument.

## I.  BACKGROUND.

Victoria and Mark Jocius were divorced by Judge Clarence Parrish on August 30, 1990. At the time of the divorce, the trial court accepted the parties' signed marital settlement agreement. This document divided their marital property, gave sole legal custody of the

three children of the marriage to Victoria, and provided Mark with periods of physical placement, stating he was entitled to "reasonable visitation upon notice." It also required Mark to pay 29% of his income as child support when he was employed. On the date of the divorce, Mark, although a prisoner at the Dodge County Correctional Institution, was present at the hearing having been produced by an order of the court. After the divorce, the record shows little activity on the case until January 1996.

On January 5, 1996, a letter purportedly written and signed by the three Jocius children, all of whom were still minors, was sent to the original trial judge, Judge Parrish. By this time, Judge Parrish had left the bench and had died. The letter was redirected to Judge Dominic Amato, who apparently had inherited Judge Parrish's calendar. Judge Amato read the letter and appointed a guardian ad litem for the children on January 19, 1996.[2] Following the appointment, the

---

[2] We caution judges to avoid taking a similar course of action as they may run afoul of SCR 60.04(1)(g)(1) governing ex parte communications. Supreme Court Rule 60.04(1)(g)(1)a & b provides:

> (g) A judge shall accord to every person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to law. A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding except that:
>
> 1. A judge may initiate, permit, engage in or consider ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits if all of the following conditions are met:
>
> a. The judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.
>
> b. When the ex parte communication may affect the substance of the action or proceeding, the judge promptly notifies all of

guardian ad litem submitted an affidavit which served as the underpinnings for obtaining a child abuse temporary restraining order under § 813.122(4), STATS. Victoria also brought a domestic abuse temporary restraining order pursuant to § 813.12, STATS. On April 1, 1996, Judge Amato handled both injunction hearings and entered injunctions against Mark who was present, having been produced from the Brown County Jail.[3] The record also reflects that, at the same time, the trial court changed Victoria's surname from Jocius

---

the other parties of the substance of the ex parte communication and allows each party an opportunity to respond.

We recognize that often well-intentioned parties and friends attempt to communicate with judges in divorce cases in the hope of influencing the judge's decision. Judges need to institute procedures so that these communiques do not inadvertently violate the ex parte communication directive.

Further, while we share the trial court's concern for the welfare of young children, we feel it unwise to appoint a guardian ad litem for children in a divorce action several years after the divorce has been granted when there is no pending litigation. This is especially so when the appointment is done on the strength of a letter sent by three children addressed to another judge, and the parents have not been contacted and allowed to respond. The better course of action, if a complaint raising questions about a child's safety and welfare reaches the judge, is to contact the county child welfare agency which is statutorily required to investigate such matters and is better equipped to handle emergencies.

[3] We note that under § 813.122(2), STATS., child abuse actions are to be commenced only by petition. Here, the action was commenced by an unsigned affidavit of the guardian ad litem and by her "oral motion." However, the child abuse injunction is not being challenged on appeal.

to Fleming, her maiden name, some six years after the divorce took place.[4]

Besides litigating the child abuse action, the guardian ad litem also filed an order to show cause on March 12, 1996, asking for a complete denial of Mark's periods of physical placement with the children, claiming that "such placement would endanger the children's physical, mental and emotional health pursuant to Wis. Stats sec. 767.325(4)." Additionally, the guardian ad litem requested that the children's surnames be changed to their mother's maiden name. Later, Victoria, now represented by counsel, also filed a motion entitled "Notice of Motion and Motion to Deny Placement and Grant Name Change."

The record also reflects that, apparently in anticipation of a contested hearing pursuant to §§ 767.325 and 767.24, STATS., on April 17, 1996, the trial court appointed counsel for the respondent, citing *A.S. v. State*, 168 Wis. 2d 995, 485 N.W.2d 52 (1992), as authority.[5] On June 7, 1996, following a multi-day

---

[4] It is not clear that the family court had the authority to change the name six years after the divorce. Section 767.20, STATS., provides:

> **Name of spouse.** The court, upon granting a divorce, shall allow either spouse, upon request, to resume a former legal surname, if any.

Victoria's change of name, however, is not challenged in this appeal.

[5] In *A.S. v. State*, 168 Wis. 2d 995, 485 N.W.2d 52 (1992), the supreme court held that the right to counsel, if granted by a specific statute, includes the right to effective counsel. *Id.* at 1002, 485 N.W.2d at 54. *A.S.* concerned a termination of parental rights proceeding, pursuant to § 48.415, STATS., and there was no dispute in that case that § 48.23(2)(a), STATS., 1987–88, specifically granted a right to counsel in such proceedings. *See id.* at 999–1000, 485 N.W.2d at 53. By contrast, the only pend-

hearing, the trial court gave an oral decision from the bench, later reduced to writing, in which it denied Mark any periods of physical placement with his children and prohibited Mark from petitioning for any change in physical placement of the children. The court's order also changed the children's surnames to Fleming. Additionally, it ordered the domestic abuse injunction converted to a permanent injunction.[6]

## II. ANALYSIS.

As stated in *Koeller v. Koeller*, 195 Wis. 2d 660, 536 N.W.2d 2d 216 (Ct. App. 1995):

> Custody determinations are matters within the trial court's discretion and will be sustained on appeal where the court exercises its discretion on

ing matters in this case were requests for a denial of periods of physical placement under Chapter 767, STATS., and for a name change. There is no corresponding statutory authority in Chapter 767 for the appointment of counsel for indigent adult parties in a post-judgment action brought under § 767.325, STATS. Thus, the trial court's reliance on *A.S.* as authority for the appointment of an attorney was misplaced, and the trial court exceeded its authority in appointing private counsel for Mark. Further, although no order can be located in the record appointing an attorney for Victoria, the submitted briefs and the subsequent order of the trial court for payment of attorney fees suggest that the trial court made such an appointment. There is also no authority for the appointment of a private attorney for an indigent petitioner in a domestic abuse action. As a consequence, upon remand, the appointed attorneys for Mark and Victoria, if not privately retained or acting pro bono, are relieved of any further duties in this case.

[6] The domestic abuse injunction statute specifies a two-year time limit; however, the domestic abuse injunction is not being appealed. *See* § 813.12(4)(c), STATS.

the basis of the law and the facts of record and employs a logical rationale in arriving at its decision. *Licary v. Licary*, 168 Wis. 2d 686, 692, 484 N.W.2d 371, 374 (Ct. App. 1992). A court erroneously exercises its discretion, however, when it bases its determination on an error of law. *Id*.

Because there is no common-law jurisdiction over the subject of divorce in Wisconsin, such powers that Wisconsin courts possess in this area are "entirely dependent on legislative authority. . . ." *Groh v. Groh*, 110 Wis. 2d 117, 122, 327 N.W.2d 655, 658 (1983). And "where the legislature has set forth a plan or scheme as to the manner and limitation of the court's exercise of its jurisdiction, that expression of the legislative will must be carried out and power limitations adhered to." *Id*. at 123, 327 N.W.2d at 658. Thus, "[a]lthough the trial court has a broad discretion with respect to custody determinations, which will be given great weight on review, 'courts have no power in awarding custody of minor children other than that provided by statute.'" *Schwantes v. Schwantes*, 121 Wis. 2d 607, 622, 360 N.W.2d 69, 76 (Ct. App. 1984) (quoted sources omitted).

*Id*. at 663–64, 536 N.W.2d at 218.

Following a divorce, § 767.325, STATS., permits a trial court to modify the existing provisions governing legal custody and physical placement of the children. As pertinent here, § 767.325(1)(b) reads:

[U]pon petition, motion or order to show cause by a party, a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following:

111

a. The modification is in the best interest of the child.

b. There has been a substantial change of circumstance since the entry of the last order affecting legal custody or the last order substantially affecting physical placement.

A hearing brought under § 767.325, STATS., asking for a change in the physical placement of a child, requires the trial court to utilize the factors set forth in § 767.24(4), STATS., in deciding the appropriate amount of time the non-custodial parent has physical placement.[7] The statute starts with the presumption that both parents will have what was formerly known as visitation, and is now known as periods of physical placement. Additionally, both §§ 767.325(4) and 767.24(4)(b), STATS., anticipate and authorize a complete denial of physical placement, but only when the

---

[7] Section 767.24(4), STATS., provides:

(4)  ALLOCATION OF PHYSICAL PLACEMENT. (a) Except as provided under par. (b), if the court orders sole or joint legal custody under sub. (2), the court shall allocate periods of physical placement between the parties in accordance with this subsection. In determining the allocation of periods of physical placement, the court shall consider each case on the basis of the factors in sub. (5).

(b)  A child is entitled to periods of physical placement with both parents unless, after a hearing, the court finds that physical placement with a parent would endanger the child's physical, mental or emotional health.

(c)  No court may deny periods of physical placement for failure to meet, or grant periods of physical placement for meeting, any financial obligation to the child or the former spouse.

(cm)  If a court denies periods of physical placement under this section, the court shall give the parent that was denied periods of physical placement the warning provided under s. 48.356.

(d)  If the court grants periods of physical placement to more than one parent, it shall order a parent with legal custody and physical placement rights to provide the notice required under s. 767.327 (1).

112

court is satisfied that physical placement will threaten a child's physical, mental, or emotional health. Section 767.325(4) reads:

> DENIAL OF PHYSICAL PLACEMENT. Upon petition, motion or order to show cause by a party or on its own motion, a court may deny a parent's physical placement rights at any time if it finds that the physical placement rights would endanger the child's physical, mental or emotional health.

Section 767.24(4)(b), STATS., reads:

> A child is entitled to periods of physical placement with both parents unless, after a hearing, the court finds that physical placement with a parent would endanger the child's physical, mental or emotional health.

Mark concedes that the trial court could deny him physical placement of the children. Mark argues, though, that the trial court so exceeded its authority and "stacked the deck" against him that the entire order is suspect and should be overturned. The trial court's order reads: "[T]hat all dynamics of the relationship of parent Mr. Jocius with his children Matthew and Jennifer, is permanently limited to the financial responsibility to support these children." With respect to the third child, the trial court order reads:

> [A]ll the dynamics of the relationship of parent Mark Jocius and Bryan Jocius is indefinitely limited to the financial responsibility to support that child. . . . Mr. Mark Jocius is barred from asking this Court for any relief as it relates to that child, save for the responsibility that Mr. Jocius has to provide economic support.

113

These orders were based on the trial court's finding, which states:

> It is clear from the evidence that Mark Jocius has been, ever since the birth of the first child, a non-parent. . . . Mr. Jocius is a detriment to the minor children. Mr. Jocius has done really nothing in the best interests of the children. Mr. Jocius is not a fit and proper parent.

This finding, based on the testimony of one of the expert witnesses, is sufficient to invoke § 767.24(4)(b), STATS. However, in addition to denying Mark physical placement of his children, the trial court took the extraordinary step of making his denial of physical placement order permanent. While the order references and incorporates a list of authorities that the trial court believes support its position, the trial court cites only one case, *Holtzman v. Knott*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995), specifically in its order. Given the holding in *Holtzman*, it is apparent that the trial court relied on this case as authority for its permanent physical placement order. Victoria and the guardian ad litem argue that *Holtzman* permits the trial court to fashion a remedy not specifically mentioned in the statutes. We are not so persuaded. Our review of *Holtzman* convinces us that it is inapposite to the case before us.

In *Holtzman*, the former same-sex partner of the biological mother of a child, who lived with the child since birth, sought both custody and visitation after the breakup of her relationship with the child's mother. *See id.* at 661–62, 533 N.W.2d at 422. The supreme court ruled that the former partner did not have standing to seek custody, but that the circuit court could grant visitation rights if the former partner was able to prove all the elements of a four-part test. *See id.* at 699,

533 N.W.2d at 437. In a lengthy opinion, the supreme court noted that the problem presented by the facts of the case was not addressed in Chapter 767, STATS., and consequently ruled that the then-existing visitation statute did not apply to the set of facts before the court. *See id*. at 658, 533 N.W.2d at 421 ("For the reasons set forth, we conclude that the ch. 767 visitation statute, sec. 767.245, Stats. 1991–92, does not apply to Holtzman's petition for visitation rights to Knott's biological child."). The court then went on to craft a solution to this unique situation, determining that the trial court could exercise its equitable powers to grant visitation apart from the visitation statute, if the petitioner proved all the elements of a four-part test. *See id*.

Unlike *Holtzman*, provisions of the current visitation statute clearly address and apply to the current dispute. Moreover, here the trial court was not confronted with a request for visitation by a person who is not mentioned in the existing statutes. Nor does this case present a situation where the court is grappling with the concept of expanding visitation rights to those in disintegrating, non-traditional families. On the contrary, here the trial court was attempting to limit the ability of a biological parent from ever seeking contact with his children, while still continuing his financial responsibility to them. We conclude that the pronouncement in *Holtzman*, permitting a limited exercise of equitable powers, has no application here because the current visitation statute covers the circumstances in this case, and the facts are distinctly different.

The issue then becomes whether the body of case law dealing with family court jurisdiction permits the trial court to make a prospective order. Several cases

dealing with custody disputes have addressed the trial court's authority under § 767.24, STATS. In *Poeschel v. Poeschel*, 115 Wis. 2d 570, 341 N.W.2d 407 (Ct. App. 1983), when confronted with the question of whether the trial court could order alternating custody with each parent having sole custody for six months, this court said: "The trial court did not have the authority to order alternating custody. Its only power in awarding custody of minor children is that provided by statute." *Id.* at 571–72, 341 N.W.2d at 407–08 (citing *Groh v. Groh*, 110 Wis. 2d 117, 123, 327 N.W.2d 655, 658 (1983)). Similarly, in *Groh*, the supreme court found the trial court lacked the authority under § 767.24 to order a mother to relocate within the state as a condition of retaining custody of her children. *Groh*, 110 Wis. 2d at 119, 327 N.W.2d at 656. The court concluded that: "The authority of the legislature to limit a court's power in awarding custody was recognized by this court in *Hamachek v. Hamachek*, 270 Wis. 194, 198–99, 70 N.W.2d 595 (1955), wherein this court said: 'Courts have no power in awarding custody of minor children other than that provided by statute.' " *Groh*, 110 Wis. 2d at 123, 327 N.W.2d at 658. Later in its analysis, in discussing whether the statute permitted the court to invoke its authority to require the parent to live in a designated part of the state, the supreme court opined: "Application of the doctrine of *expressio unius est exclusio alterius* to [the visitation provision] leads to the conclusion that the legislature's failure to specifically confer the power is evidence of legislative intent not to permit the exercise of the power." *Id.* at 125, 327 N.W.2d at 659. Thus, the case law is replete with declarations that the power of a circuit court judge in custody and visitation matters is generally subject to

legislative will and, absent an authorizing statutory provision, the court is usually powerless to act.

Another case has also addressed the legality of prospective orders. Recently, in *Koeller*, we reversed the trial court when it made a prospective order concerning the children in that case. We reiterated that "the circuit court's authority in divorce cases 'is confined altogether to such express and *incidental powers* as are conferred by statute.'" *Koeller*, 195 Wis. 2d at 665, 536 N.W.2d at 218 (emphasis added in *Koeller*; citation omitted). Later, this court noted:

> We do not see how the power to order a change of custody that is to take place at some unknown time in the future, upon the occurrence of some stated contingency, may be necessarily implied or inferred from the authority granted to the court by either § 767.24(3) or § 767.325, STATS. Not only is the key statutory language cast in the present tense but the plain underlying purpose of these provisions is to permit the court to assess the effect of historical *and present* factors upon the child's well-being in order to determine the type of custodial arrangement that will best serve his or her interest.

*Id.* at 667, 536 N.W.2d at 219 (emphasis in original).

Implicit in the trial court's order is its view that applying the best interests of a child test permits what is not specifically authorized by statute.[8] The question

---

[8] The trial court's order reads:

When compelling, extraordinary circumstances exist in relationship between parent and child, and if, under clear and convincing evidence, it is shown that the actions of that parent are not in the best interests of that child, and the actions of the parent are in harm's way, and detrimental to the child, then, in that event,

of whether the application of the "best interests of the child" test permits an otherwise unauthorized order was flatly rejected by the supreme court in *Groh*:

> If the trial court had the power to make any order it pleased so long as the order could somehow be justified by recitation of the rubric "in the best interest of the children" the limits the legislature placed on the court's exercise of power in custody matters would be meaningless.

*Id.* at 126, 327 N.W.2d at 659.

Applying the logic of these precedents, we determine that the statute permitting a trial court to deny a parent physical placement does not permit the trial court to make a prospective order prohibiting a parent from requesting a change in physical placement in the future. Thus, we must conclude that the trial court exceeded its authority when it prohibited Mark from petitioning the court in the future for a change in the current order.[9] As a result of this conclusion, we see no need to address Mark's argument that the trial court's order permanently denying him physical placement is unconstitutional. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (court of appeals need

---

pursuant to relief requested by the guardian ad litem, with a court-appointed forensic psychologist, have safeguards, this court would and will, under the principles of law, entertain any petition by any child for relief to the extent that's being asked for here. [sic]

[9] As a consequence of our decision, the trial court's order that "the guardian ad litem and the court appointed psychologist will stay on this case for the purpose of determining when or if Brian Jocius will exercise his desire to see his father" is a nullity.

not discuss issues on appeal which are disposed of by decision on other issues).

Further, although we conclude that the trial court erred by making its order permanent, we decline to address whether the court erred by denying Mark physical placement rights because in order to determine whether the trial court erroneously exercised its discretion with respect to this issue, we must be able to examine a full transcript of the proceedings. Mark, however, has failed to provide us with the transcript. *See Ryde v. Dane County Dep't of Soc. Servs.*, 76 Wis. 2d 558, 563, 251 N.W.2d 791, 793 (1977) (lack of a transcript limits review to those parts of the record available to the appellate court).

We will, however, address Mark's argument regarding the children's name change. In urging us to overturn the trial court's entire order, Mark has pointed out that the trial court changed the surnames of the children. He posits that such an order is contrary to the civil procedure for name changes. We agree. As noted earlier, a provision in Chapter 767, STATS., permits the trial court to restore a former surname to a divorcing spouse. This section makes no mention of the children, and there is no other statute found in Chapter 767 authorizing name changes for children in divorcing families. The general name change procedure statute can be found in Chapter 786, STATS. Section 786.36, STATS., sets out the civil procedure for a change of name in Wisconsin, including the names of children. This procedure requires, *inter alia*, a party to file a petition, with proof of publication. It also prohibits a name change for a minor under fourteen unless both parents consent. Here, none of § 786.36's procedural steps were followed. A trial court cannot ignore the statutory pro-

cedure promulgated by the legislature. "If the statute is valid, it is the duty of the court to apply it in accordance with its terms." *Town of Amnicon v. Kimmes*, 249 Wis. 321, 324, 24 N.W.2d 592, 593 (1946). The trial court's order changing the names of the children was in contradiction to the statute and is void.[10]

Finally, our review of the record reveals that the trial court ordered Mark to be responsible for the cost of the proceedings, all legal fees, and all experts' fees. Although the order states no reason for making Mark responsible, and we do not have the benefit of a transcript, we surmise that the court predicated its decision on the theory that Mark would have no future attorney fees as a result of the trial court's order prohibiting any future litigation. Since our order nullifies the trial court's prospective application of its physical placement order, thus removing the underpinnings for the trial court's presumed rationale, we remand the issue of payment to the trial court. Any decision on county reimbursement or payment of other fees should be decided according to pertinent statutes and case law.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[10] On remand, the trial court should correct the children's names. We also conclude that the role of the guardian ad litem in a post-judgment revision of a physical placement case does not extend to or include the commencement of a civil name change action on behalf of the children.