In re the Paternity of William Pero:

State of Wisconsin, Petitioner,

Wendy Pero, Co-Petitioner-Respondent,

v.

Donald Lucas, Jr., Respondent-Appellant.

Court of Appeals

*No. 2005AP1180. Submitted on briefs March 7, 2006.
—Decided May 9, 2006.*

2006 WI App 112

(Also reported in 718 N.W.2d 184.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thea M. Keane* and *Denise Greathouse* of *Host & Keane, S.C.*, of Brookfield.

On behalf of the co-petitioner-respondent, the cause was submitted on the brief of *Linda A. Ivanovic* of *Ivanovic Law Offices*, of Milwaukee.

On behalf of the guardian ad litem, a brief was submitted by *Kathryn Weaver* of *Weaver Law Offices*, of Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J. Donald Lucas, Jr., appeals from an order modifying legal custody and periods of physical placement of his son William.[1] He argues that the trial court erroneously exercised its discretion when it: (1) awarded sole custody to Wendy Pero when neither party had raised the issue of changing from joint custody to sole custody; (2) took away Lucas's joint custody without making adequate findings under Wis. Stat. §§ 767.24 and 767.325(1)(b) (2003–04);[2] and (3) determined, before testimony was taken, that equal placement would not work. We affirm the portion of the order modifying the schedule for physical placement. However, we conclude that because the requirements of

---

[1] The order also directed Lucas to pay all guardian ad litem fees associated with his motion, and addressed several other issues. Those parts of the order are not challenged on appeal and will not be addressed.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

WIS. STAT. § 767.325(1)(b) were not followed, the trial court lacked authority to *sua sponte* modify the custody order from joint custody to sole custody. Therefore, we reverse that portion of the order and remand with directions that the trial court enter an amended order consistent with this opinion.

## BACKGROUND

¶ 2. William, who was born in 1998, is the child of Lucas and Pero. The record reflects that at the time of William's birth, the parties were not living together and did not subsequently do so. It is unknown whether Lucas and Pero ever lived together as a couple.

¶ 3. In 1999, a paternity action was filed. In May 2001, the parties entered into a stipulation and order, which the trial court accepted, that provided for joint custody, awarded primary physical placement to Pero, and gave Lucas substantial periods of physical placement (hereafter "2001 Order").[3] Specifically, Lucas had placement from 7 a.m. to 11 a.m. four mornings a week, alternating weekends from 7 p.m. Friday through 11 a.m. Monday, and on specific holidays.

¶ 4. The 2001 Order also stated that the parties had stipulated "[t]hat the minor child's enrollment in full-time school shall be a change in circumstances, and either party may bring a motion at that time to modify the placement terms of this Order."

¶ 5. In February 2004, Lucas filed a motion to enforce the physical placement order, alleging that Lucas had been denied his periods of physical place-

---

[3] The 2001 Order was signed by the Hon. Daniel A. Noonan. The proceedings since 2004 that gave rise to this appeal were held before the Hon. Dominic S. Amato.

ment.[4] He also moved to modify the physical placement schedule and sought the reappointment of a guardian ad litem. He did not request a change from joint custody. Lucas alleged that since William had begun full-time kindergarten in the fall of 2003, the parties had informally worked out some changes to the placement schedule, but that in January 2004, Pero had curtailed Lucas's placement. Lucas sought a modification of the placement schedule that would give him equal placement, as well as "other and further relief as the Court deems appropriate under the circumstances."

¶ 6. Pero subsequently filed a motion to modify the placement schedule and to modify child support. She did not request a change from joint custody. She argued that William's enrollment in school was, per the parties' 2001 stipulation, a "substantial change in circumstances" and that a modification of physical placement terms was necessary.[5] The motion asserted that Lucas's weekday morning placement should be eliminated, as this placement "is too disruptive for William."

¶ 7. For reasons apparently related to scheduling, a hearing on the motions to modify placement was continued numerous times until February 24, 2005, when it took place before the trial court. It appears that in October 2004, while the motions were pending, the parties began using a temporary placement schedule that placed William with Lucas from 3:30 p.m. to 7 p.m.

---

[4] The parties do not discuss the results of Lucas's motion to enforce physical placement. Any orders with respect to that motion were not appealed and will not be addressed.

[5] The affidavit introduced in support of Pero's motion erroneously states that the 2001 Order indicated that the child's enrollment in school would be a *substantial* change in circumstances. The 2001 Order did not include the word substantial.

on Tuesdays and Thursdays, and every other weekend from Friday through Monday.[6]

¶ 8. At the February 24, 2005 hearing, the trial court began by offering general comments on the case. The trial court asked for clarification concerning the issues before the court. Pero indicated that placement and support were at issue; Lucas indicated that placement was at issue. The parties offered a brief overview of the case, with Lucas's attorney alerting the trial court to Lucas's assertion that Pero has been "inflexible in terms of placement." Pero's attorney told the trial court that the parties had "communication issues." She explained: "[T]hey tried to communicate, they tried co-parent counseling. It doesn't work."

¶ 9. In response to the comments on communication, the trial court and Lucas's trial counsel had the following exchange:

> THE COURT: How is 50/50 going to work if they can't cooperate and communicate?
>
> [COUNSEL FOR LUCAS]: If we have a time scheduled, these parties, and we're not in the middle of court, these parties have been able to work things out.
>
> Our problem is that when they do that, they come to court and everything is taken away.
>
> THE COURT: Just [bear] with me, okay? I think you know me well enough, I'm not prejudging anything. I have a 1999 paternity action. Eight pages of docket entries.
>
> The last page is filled three or four entries. The first page is filled half, everything else is filled in full.

---

[6] There is no signed order in the record stating this, but testimony at the hearing explained how the parties were handling placement as of February 2005.

> You're both back here again, which tells me that there's no way shared placement is going to work, because you all keep coming to court.
>
> Someone is going to be primary and someone else is going to be alternate placement.

Lucas's counsel then provided the trial court with additional background, noting that the 2001 Order "indicated that the parties are to return to court, or may return to court, to modify the schedule to increase placement."

¶ 10. In response, the trial court said that it was not trying to argue with counsel, but noted:

> I don't know who is not cooperating or communicating, but this case, on [its] face, and based upon your opening statements to me, about needing firm definite dates, because of the inability to cooperate, it's not a shared placement case.
>
> Someone is going to get primary placement, and sole custody, and someone is going to get alternate placement.
>
> I don't know if he's going to get it or she's going to get it. But that's where the case is heading . . . .
>
> . . . .
>
> Unless you can tell me there is a reason to go to trial on this thing, I'm telling you, if you go to trial, someone is going to end up primarily placed with sole custody based upon the status of the record, unless someone can prove something differently during the course of the trial.

¶ 11. Lucas's trial counsel indicated that she wanted to proceed with testimony. The trial court then stated:

I'll let you continue. I'll let you try your case.

I'm indicating, based on [the] undisputed status of the record today, based upon what the lawyers have said, even though you feel it's still workable, based upon what has been presented, there's a high probability it's going to go the opposite way.

Sole custody and primary placement. I'll keep an open mind. Let's see. Call your first witness.

¶ 12. Both Lucas and Pero testified. Lucas described his relationship with William, his parenting style, his efforts to spend more time with William, and his difficulties with Pero. He also testified that he now lives approximately twenty-five minutes away from Pero. Pero described her interactions with William and her preferences for a physical placement schedule.

¶ 13. Lucas, Pero and the guardian ad litem all made closing arguments, offering their suggestions with respect to physical placement. No one argued that joint custody should be changed to sole custody for either party.

¶ 14. With respect to placement, Lucas's trial counsel asked the trial court to give the parties equal placement. Pero's trial counsel argued that the parties should continue operating under the placement schedule that began in October 2004, with Lucas having William two afternoons a week and every other weekend, noting: "That schedule is working. Both parties said it's working." Pero's trial counsel also suggested that Lucas be given additional time in the summer.

¶ 15. The guardian ad litem also recommended that the parties continue the regular placement schedule that the parties began using in October 2004, with additional time for Lucas in the summer. She argued:

Both parents acknowledge William is a generally happy, well adjusted child. They're both really good parents. They both really love William.

And I think it is also clear through the testimony, mom has more structure in her household than does dad. [That's] not a good thing or a bad thing.

However, during the school year, more structure is probably better, and during the summer, having a father that is really actively involved with the child, in my opinion, is that the father should have substantial periods of placement during the summer, and that's why I recommended an equally shared placement schedule during the summer.

With respect to the school year, however, the guardian ad litem reiterated that equal placement "simply doesn't work." She also commented on the parties' inability to communicate: "These parties have almost no ability to communicate with each other."

¶ 16. The trial court then made findings and a decision on the record. The trial court stated:

To have a shared placement, you have to communicate and get along and live in close proximity, and you can't bus the kid all over the country.

You don't want the child spending significant amounts of time in the vehicle, going from one point to another . . . .

. . . .

So close proximity, lots of communication, lots of cooperation. Lots of sharing.

Non rigid access for both mother and father, look towards each other, in the best interest of the child or children, to work together, is something very wonderful.

But none of those things exist in this case.

There is a lot of disagreement. Lots of excuses as to why it's the other person's fault. Both of you are some what [sic] to blame . . . .

. . . .

If you can't cooperate and communicate, not only is shared placement not an appropriate avenue to pursue, but joint custody is not [an] appropriate avenue to pursue. All you do is find yourself in the troughs of litigation in the court of law.

The trial court also discussed the child's perspective:

[T]his [] child sees mom and dad disagree, as dad said the boy – and mother acknowledges the boy – gets traumatized through all of this.

. . . .

This kid, like any other kid, needs peace. This kid, like any other kid, needs stability and tranquility . . . . Without battle, or the War of the Roses, or a paternity action constantly going in and out of court.

That is what this case has been in the last five years. In and out of court. This court sat as a trier of fact, hearing the evidence and credibility of the witnesses, and looks at the testimony, looks at the demeanor of the witnesses, looks at the way they responded to questions, . . . considers their maturity, parenting skills, their ability to respond as opposed to react.

Neither parent is a bad parent here . . . . [T]he kid's very lucky because you both have a lot of love for your child.

But the child is not a piece of property. It's [sic] not a prize. It [sic] can't be bounced around.

794

And the parent who's demonstrated the better parenting skills, a greater level of maturity, the parent who demonstrated a greater level of responsibility, is the mother in this case.

And though dad is a wonderful father, because they can't communicate, and they both acknowledge they can't communicate, I can't keep having the turmoil in this child's life.

Sole custody is awarded to the mother at this time.

The trial court explained that "[t]o do otherwise, will foster more acrimony, differences, and unnecessary litigation. And it's going to do ultimate harm and damage to this child."

¶ 17. With respect to physical placement, the trial court ordered that the placement schedule in effect since October 2004 would stay in effect, which is what Pero and the guardian ad litem both requested. The trial court explained its reasoning: "I only think two transfers a week are important. I don't want this child bounced around." The trial court added:

If dad is willing to make a decision to move back into the school district with the child, and there's more flexibility, and parties can enter into a written agreement, and submit it to the court for signature, that tells me they're at a different level, and starting to be able to communicate, I would be willing to do something.

¶ 18. The trial court also said that Lucas should have "significant amounts of placement while the child is not in school." Therefore, the trial court awarded equal placement during the summer, based on a week-on, week-off schedule. It also awarded specific holidays to each party.

795

¶ 19. The trial court's ruling granted Lucas additional placement during the summer months; however, Lucas did not receive increased placement during the school year. Ultimately, Lucas received slightly more placement with William than he had under the 2001 Order, but less than the equal placement he was seeking. The trial court stripped Lucas of joint custody and awarded Pero sole custody. This appeal followed.

## DISCUSSION

¶ 20. Lucas challenges the order's provisions with respect to custody and physical placement. Specifically, he argues that the trial court erroneously exercised its discretion when it: (1) awarded sole custody to Pero when neither party had raised the issue of changing from joint custody to sole custody; (2) took away Lucas's joint custody without making adequate findings under Wis. Stat. §§ 767.24 and 767.325(1)(b); and (3) determined, before testimony was taken, that equal placement would not work.

### I. Legal standards

¶ 21. Pursuant to Wis. Stat. § 767.325(1)(b),[7] governing "substantial modifications" to custody and physi-

---

[7] Wisconsin Stat. § 767.325 provides in relevant part:

(1) Substantial modifications.

. . . .

(b) *After 2–year period.* 1. Except as provided under par. (a) and sub. (2), upon petition, motion or order to show cause by a party, a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following:

a. The modification is in the best interest of the child.

cal placement orders after the initial two-year period, the trial court considers modifications using a two-step process.

First, as a threshold matter, whenever a requested modification "would substantially alter the time a parent may spend with his or her child," the moving party must show that there has been "a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement."

*Greene v. Hahn*, 2004 WI App 214, ¶ 22, 277 Wis. 2d 473, 689 N.W.2d 657 (quoting § 767.325(1)(b)1.b.).

¶ 22. If the trial court finds that there has been a substantial change in circumstances, it then moves to the second step: considering whether any modification would be " 'in the best interest of the child.' " *Id.* (quoting WIS. STAT. § 767.325(1)(b)1.a.). When considering the child's best interest, the factors to be considered in modifying legal custody or physical placement are those listed in WIS. STAT. § 767.24(5)(am), subject to § 767.24(5)(bm). Sec. 767.325(5m). The trial court "must presume that continuing 'the current allocation of deci-

---

b. There has been a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement.

2. With respect to subd. 1., there is a rebuttable presumption that:

a. Continuing the current allocation of decision making under a legal custody order is in the best interest of the child.

b. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

3. A change in the economic circumstances or marital status of either party is not sufficient to meet the standards for modification under subd. 1.

sion making under a legal custody order' and continuing 'the child's physical placement with the parent with whom the child resides for the greater period of time' are both in the best interest of the child." *Greene*, 277 Wis. 2d 473, ¶ 22 (quoting § 767.325(1)(b)2.).

¶ 23. On review, whether a party seeking to modify an existing legal custody order or physical placement order has established a substantial change in circumstances is a question of law that we decide *de novo*. *Id.*, ¶ 23. "When doing so, however, we must 'give weight to a trial court's decision' because the determination is 'heavily dependent upon an interpretation and analysis of underlying facts.' " *Id.* (citation omitted). With respect to the best interest determination, we consider whether the trial court has properly considered and weighed the appropriate factors to determine what is in the child's best interest, using the erroneous exercise of discretion standard. *Id.*, ¶ 27.

## II. Legal custody

¶ 24. It is undisputed that neither parent sought sole custody in their respective motions, and that neither parent nor the guardian ad litem argued that there had been a substantial change in circumstances warranting a change from joint custody to sole custody, although all heard the trial court suggest at the opening of the hearing that it would consider awarding sole legal custody to one parent. On appeal, both Pero and the guardian ad litem urge this court to affirm the order in its entirety.

¶ 25. Lucas points out that "neither party suggested that [the] joint custody arrangement had broken down and was no longer viable." Thus, he argues that

the trial court lacked authority to modify legal custody on its own motion. He notes that after two years have passed since an initial order, WIS. STAT. § 767.325(1)(b)1., governing the revision of legal custody and physical placement orders, "grants the court the authority to modify an order of legal custody [']upon petition, motion or order to show cause by a party.['] Nowhere does the statute grant the court the authority to modify legal custody on its own motion." (quoting § 767.325(1)(b)1.).

¶ 26. In response, both Pero and the guardian ad litem argue that the trial court had the authority to modify legal custody in William's best interest. The guardian ad litem also argues, without citation to authority, that "Lucas opened the door for the trial court to modify custody" when he requested, among other things, "other and further relief as the Court deems appropriate under the circumstances."

¶ 27. "[A]lthough the trial court has a broad discretion with respect to custody determinations, which will be given great weight on review, courts have no power in awarding custody of minor children other than that provided by statute." *Jocius v. Jocius*, 218 Wis. 2d 103, 111, 580 N.W.2d 708 (Ct. App. 1998). Thus, the trial court's power "in custody and visitation matters is generally subject to legislative will and, absent an authorizing statutory provision, the court is usually powerless to act." *Id.* at 116–17.

¶ 28. Therefore, to determine the trial court's authority to amend the existing child custody order, we must look to WIS. STAT. § 767.325, governing revisions of legal custody orders and physical placement orders. We interpret statutes *de novo*. *Abbas v. Palmersheim*, 2004

WI App 126, ¶ 17, 275 Wis. 2d 311, 685 N.W.2d 546. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statute's language, giving it "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶ 45. We also consider context, interpreting the statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.* (citation omitted).

¶ 29. Our review of Wis. Stat. § 767.325 identifies two relevant subsections: §§ 767.325(1)(b)1. and 767.325(6). Section 767.325(1)(b)1. provides:

> Except as provided under par. (a) and sub. (2), *upon petition, motion or order to show cause by a party,* a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following . . . .

(Emphasis supplied.) The plain, unambiguous language of this subsection requires a petition, motion or order to show cause by a *party,* not a *sua sponte* action by the trial court. We perceive no ambiguity; a party

must file a petition, motion or order to show cause in order to empower the trial court to act. In contrast, the legislature has, in other statutes, explicitly authorized trial courts to act on their own initiative. *See, e.g.,* WIS. STAT. § 48.355(3)(b)1m.[8] Section 767.325(1)(b)1. provides no similar, explicit authority to trial courts to consider changes in legal custody or physical placement on their own initiative.

¶ 30. The notice provision of WIS. STAT. ch. 767, found in WIS. STAT. § 767.325(6), further supports the conclusion that trial courts are not empowered to act *sua sponte* to modify legal custody. Section 767.325(6) provides: "No court may enter an order for modification under this section until notice of the petition, motion or order to show cause requesting modification has been given to the child's parents, if they can be found, and to any relative or agency having custody of the child." This does not contemplate providing notice of informal moves to modify custody, such as the trial court's *sua sponte* consideration of the issue. Moreover, § 767.325(6) emphasizes the need to give advance no-

---

[8] WISCONSIN STAT. § 48.355(3)(b)1m provides:

Except as provided in subd. 2., if a parent who is granted visitation rights with a child under par. (a) is convicted under s. 940.01 of the first-degree intentional homicide, or under s. 940.05 of the 2nd-degree intentional homicide, of the child's other parent, and the conviction has not been reversed, set aside or vacated, the court shall issue an order prohibiting the parent from having visitation with the child on petition of the child, the guardian or legal custodian of the child, a person or agency bound by the dispositional order or the district attorney or corporation counsel of the county in which the dispositional order was entered, *or on the court's own motion,* and on notice to the parent.

(Emphasis added.)

tice to parties of the issues to be addressed so that they can be adequately prepared.

¶ 31. Applying WIS. STAT. §§ 767.325(1)(b)1. and 767.325(6) to this case, we conclude that the trial court erroneously exercised its discretion when it *sua sponte* amended the order from joint custody to sole custody because § 767.325(1)(b)1. did not authorize the trial court to act on its own initiative.[9] Without that authority, the trial court's actions with respect to custody cannot be supported. *See Jocius*, 218 Wis. 2d at 116–17. The trial court's actions also violated § 767.325(6), because the parties were not given notice of a "petition, motion or order to show cause" since one did not exist. The trial court's comments at the beginning of the hearing saying it was inclined to consider giving one party sole custody, did not give the parties time to prepare to address that issue, which is both factually and legally different than physical placement.

---

[9] Although neither party cited *Abel v. Johnson*, 135 Wis. 2d 219, 400 N.W.2d 22 (Ct. App. 1986) (overruled on other grounds, *Herrell v. Herrell*, 144 Wis. 2d 479, 488 n.3, 424 N.W.2d 403 (1988)), our independent research identified that case as one that addressed the trial court's authority to *sua sponte* consider joint legal custody. *Abel* stated: "[T]he vitality of the joint custody arrangement must be measured by the parties' actions —not their words. When faced with such a development, the family court should not hesitate to *sua sponte* raise the issue as to whether the joint custody award should be continued." *Id.* at 231. *Abel* was decided prior to the significant changes to WIS. STAT. ch. 767 that were made in 1988, which included the creation of the detailed procedure for modifying legal custody and physical placement orders, found in WIS. STAT. § 767.325. We conclude that because of legislative action our language in *Abel* relating to *sua sponte* consideration of joint legal custody is inapplicable.

¶ 32. Finally, we reject the guardian ad litem's argument that Lucas opened the door to a consideration of sole custody by including the catchall phrase "other and further relief as the Court deems appropriate under the circumstances" in his motion. The guardian ad litem cites no authority for this proposition, and we therefore need not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (We need not consider arguments which are undeveloped or unsupported by references to relevant legal authority.). We do observe, however, that if the guardian ad litem were correct, it would be impossible to provide meaningful notice under Wis. Stat. § 767.325(6), because the person receiving the motion could not know specifically which issues would be under consideration.

¶ 33. We conclude that absent a motion, petition or order to show cause brought by a party, as required by Wis. Stat. § 767.325(1)(b)1., the trial court lacked authority to amend or modify the custody order from joint custody to sole legal custody.[10] We reverse that portion of the order modifying legal custody and remand with instructions that the trial court issue an amended order restoring joint custody.

## III. Physical placement

¶ 34. We now consider whether the trial court erroneously exercised its discretion when it modified the order for physical placement. We review both the trial court's conclusion that there had been a substan-

---

[10] Because we reverse the legal custody order on this basis, we do not consider Lucas's argument that the trial court's decision to award Pero sole custody was an erroneous exercise of discretion.

803

tial change in circumstances, and its determination that modifying the physical placement order was a proper exercise of discretion. *See Greene*, 277 Wis. 2d 473, ¶¶ 23, 27.

## A. Substantial change in circumstances

¶ 35. Lucas was the original movant in this case, seeking a significant change to physical placement that would create a fifty-fifty placement arrangement. Lucas alleged that the parties had agreed in the 2001 Order that enrollment in school full-time "would constitute a change in circumstances to allow either party to bring a motion at that time to modify the terms of placement." Pero likewise asserted, in her motion to change the placement schedule, that there had been a substantial change in circumstances, citing the same reasons as Lucas.

¶ 36. In the middle of the hearing, the trial court explicitly asked the parties whether there had been a substantial change in circumstances. Lucas reiterated his position that the 2001 Order indicated that when William enrolled in school full-time, the parties could return to court, and that William's enrollment in school was a substantial change in circumstances. Although the guardian ad litem declined to offer an opinion as to whether there had been a substantial change in circumstances, she stated: "It's clear, judge, we do have to modify the current placement schedule, because the 2001 order does not accommodate the placement and school schedule . . . . Clearly they stipulated when the child starts school, that would be a reason to come back to court to modify."

¶ 37. Although the trial court did not make specific findings, it did state: "It seems the intent of this order was once the child goes to school, dad can no

804

longer exercise seven a.m. to eleven a.m. and the terms of that should be modified, to give dad different times, so he could accommodate those hours with the child." The trial court's subsequent questions and findings were all based on the second step of the analysis: what was in the child's best interest. Thus, the trial court implicitly agreed with Lucas that a substantial change in circumstances had been established. We agree.

■■■

¶ 38. We conclude that the trial court implicitly found that there had been a substantial change in circumstances warranting a change in placement, and we affirm that finding. *See Greene*, 277 Wis. 2d 473, ¶ 23 (affirming finding that there had been a substantial change in circumstances where the trial court's findings were implicit, and where the record supported that finding). We agree that the existing facts constituted a substantial change in circumstances.[11] The schedule in the original order was no longer possible, given William's enrollment in school full-time. At the time of the hearing, the parties lived twenty-five minutes apart, requiring a greater commute time than when the 2001 Order was entered. When the first order was entered, Lucas had been interacting with his then-three-year-old son for only about a year, but at the time of the hearing, Lucas had a more established relationship with his then-six-year-old son. Based on these undisputed facts, we affirm the trial court's implicit finding that there was a substantial change in circumstances warranting modification of placement.

---

[11] We need not decide whether the parties' 2001 stipulation that William's enrollment in school full-time would be "a change in circumstances" is sufficient, standing alone, to authorize this modification.

## B. Best interest determination

¶ 39. The second step in the process is a determination whether modification is in the child's best interest. Lucas contends that the trial court failed to examine any relevant facts before rejecting an equal placement, and that this was an erroneous exercise of discretion. Lucas misunderstands his burden under WIS. STAT. § 767.325. As the moving party, he must overcome the presumption that the status quo is in the child's best interest. There is no presumption that equal placement is in a child's best interest. *Keller*, 256 Wis. 2d 401, ¶ 12.

¶ 40. A trial court "erroneously exercises its discretion if it does not examine the relevant facts, applies the wrong legal standard, or fails to use a demonstrated rational process to reach a reasonable conclusion." *Brown County v. Shannon R.*, 2005 WI 160, ¶ 37, 286 Wis. 2d 278, 706 N.W.2d 269. Lucas's argument is based on the trial court's comments at the beginning of the hearing, which included the trial court's observation that there were eight pages of docket entries and its statement that "[s]omeone is going to be primary and someone else is going to be alternate placement."

¶ 41. Viewed in isolation, the trial court's statements could suggest that the trial court decided the issue without first hearing evidence. Viewed in the context of all of the trial court's comments, however, we are satisfied that the trial court did not appear to prejudge the case. The trial court was apparently providing the parties with feedback based on their opening statements, and made clear that it would "keep an open mind" and not prejudge the case. The trial court was letting the parties know its initial reaction to the case,

and providing suggestions for issues it wanted addressed.[12]

¶ 42. Lucas also argues that the trial court erroneously exercised its discretion when it limited testimony. "The admission of evidence is a decision that is left to the discretion of the [trial] court." *State v. Dunlap*, 2002 WI 19, ¶ 31, 250 Wis. 2d 466, 640 N.W.2d 112. "We will not find an erroneous exercise of that discretion when the [trial] court has properly applied the facts of record to the accepted legal standards." *Id.* In deciding whether to admit evidence or limit testimony, the trial court considers a variety of factors, including whether the evidence is relevant, *see* WIS. STAT. § 904.01, and whether even relevant evidence should be excluded on grounds of prejudice, confusion or waste of time, *see* WIS. STAT. § 904.03.

¶ 43. Lucas asserts that the trial court unfairly allowed testimony only for the time beginning when Lucas filed his motion to modify physical placement. This is simply inaccurate. The trial court did limit testimony, but only after Lucas had testified about events prior to 2004 when he filed his motion. This testimony consisted of approximately seventeen pages of transcript. We discern no erroneous exercise of discretion.

---

[12] We urge trial courts to avoid making statements that could be misinterpreted by litigants, as these were. Suggesting that one party would leave with sole custody and primary placement—even if the statement was hypothetical based on what the trial court expected to hear—can imply to the parties that they are not going to receive a fair hearing and reduce the probability of voluntary compliance with the trial court's ultimate decision.

¶ 44. Lucas also complains that he was not allowed to call character witnesses, because the trial court "insisted that all attorneys stipulate to what the witnesses would say on the stand." Essentially, the trial court accepted offers of proof rather than live testimony from some witnesses. We have reviewed the record, and are convinced that seeking stipulations where appropriate, and limiting testimony to those issues the trial court believed were most relevant, was a proper exercise of discretion. This is not a case where the parties were given only minutes to present their cases. There are one hundred and fifty-nine pages of hearing transcript, which included testimony from Pero and Lucas, as well as arguments from the parties. We discern no improper or prejudicial limit on testimony and thus no erroneous exercise of discretion.

¶ 45. Lucas does not challenge the physical placement order on other grounds. Having reviewed the record, we are convinced that there is sufficient evidence in the record to sustain the trial court's order with respect to physical placement. Notably, there was evidence that the schedule the parties were using at the time of the hearing was working well, and allowed William to spend significant time with both parents. The current order also recognizes that giving Lucas equal placement in the summer will work well, and provides more time to Lucas under the current order than under the 2001 Order. For these reasons, we affirm the order with respect to physical placement.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded with directions.