IN RE the marriage of:

Blenda Lynn SHULKA f/k/a Blenda Lynn Sikraji,
Petitioner-Appellant,†

v.

Martin John SIKRAJI, Respondent-Respondent.

Court of Appeals

*No. 2013AP2080. Submitted on briefs April 28, 2014.
—Decided October 29, 2014.*

2014 WI App 113

(Also reported in 856 N.W.2d 617).

† Petition for Review Filed.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *David Ziemer*, Glendale.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Martha Jane Thelen* of *Braden Olson Draper, LLP*, Lake Geneva.

A nonparty brief was filed by *Monika M. Schmieden* of *Schmieden Law Offices*, Elkhorn.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. Blenda Shulka appeals from two circuit court orders relating to placement and over-trial issues arising out of her divorce from Martin Sikraji. Shulka contends the circuit court erroneously conditioned her continued primary placement of the former couple's children on Shulka moving back to Lake Geneva, Wisconsin, from Lake county, Illinois. Specifically, she argues that (1) Sikraji's motion to modify judgment did not provide her notice that she could lose primary placement of the children if she did not move back to Wisconsin, (2) Sikraji did not meet his burden to show a substantial change in circumstances to justify a modification of placement under WIS. STAT. § 767.451 (2011–12),[1] and (3) the court lacked authority to order her to move into a specific school district in Wisconsin. Shulka also appeals the circuit court's determination that she committed overtrial, arguing that the Walworth county circuit court lacks the authority to order her to pay Sikraji's attorney's fees for defending against a family action she filed in a Lake county, Illinois circuit court because the alleged over-litigation occurred "in another forum." For the following reasons, we affirm.

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## BACKGROUND

¶ 2. Shulka and Sikraji divorced in 2007 and have joint custody of their two children, C.S. and T.S. The parties agree both children have some degree of autism, with C.S.'s being mild and T.S.'s being more severe. At the time of the divorce, Shulka was given primary placement, with time divided approximately sixty-four percent/thirty-six percent between the parties.

¶ 3. In October 2011, Shulka filed a "Notice of Intent to Remove Children" from Lake Geneva, Wisconsin, to Lake county, Illinois, because of her desire to move closer to a new job she had taken in Illinois. Sikraji filed an objection to the move and a motion to modify custody and placement, seeking primary placement and sole legal custody regarding medical decisions for the children. After completion of a custody study, Shulka filed motions seeking a temporary order permitting her to move with the children to Illinois, granting her sole legal custody, and modifying the placement schedule. Sikraji then filed a motion for a temporary order granting him primary placement. The family court commissioner (FCC) denied the parties' requests for temporary orders.

¶ 4. An evidentiary hearing before the FCC was held on April 24–25, 2012. In a posthearing brief, Shulka represented that she had secured full-time employment in Deerfield, Illinois, had testified at the hearing that she would move to the Lincolnshire/ Deerfield area, which is in Lake county, Illinois, and had researched multiple schools in that area. At the 2013 de novo hearing before the circuit court, which is the subject of this appeal, Shulka confirmed that she had testified before the FCC at the April 2012 hearing that she "wanted to enroll the children in either Daniel

Wright School or Half Day School respectively for the different children." At the time of the April 2012 hearing, both children had attended for a number of years Woods School in the Lake Geneva area, approximately thirty-five to forty minutes from Sikraji's residence.

¶ 5. On June 29, 2012, the FCC issued a written decision and order finding that Shulka's new job in the Lincolnshire/Deerfield area was "approximately an hour and a half away from her residence in Walworth County" and permitting her to move with the children to "Lake County, Illinois." The order continued joint legal custody and primary placement with Shulka, but reduced Sikraji's placement time with the children during the school year.

¶ 6. On August 15, 2012, approximately a week before the start of the new school year, Shulka moved from Lake Geneva to Round Lake, Illinois, instead of the Lincolnshire/Deerfield area, and enrolled the children in Big Hollow School there. Round Lake is also in Lake county, but is approximately a half-hour closer to Sikraji's residence than the Lincolnshire/Deerfield area. Shulka subsequently confirmed in her testimony at the 2013 de novo hearing that she "picked" the school "by [her]self."

¶ 7. In February 2013, Sikraji filed a "Motion to Modify Judgment" relating to the June 2012 FCC order. The same FCC held an evidentiary hearing on May 30, 2013, at which it issued an oral decision on Sikraji's motion. On June 24, 2013, the FCC signed a written order ordering Shulka to move back to the Wood School District in Lake Geneva[2] and re-enroll the children in

[2] The cover sheet for C.S.'s Individualized Education Program and letters provided by the Woods School special educa-

the Lakeland or Woods Schools located there or lose primary placement of the children. The FCC stated in the order that "[i]n light of the evidence presented at trial, the court reconsiders its order previously issued by way of a written decision on June 29, 2012, and therefore modifies the order." In the decision, the FCC stated that Shulka had "broken the overall spirit" of the 2012 order permitting her to move the children to Illinois with her and modifying placement to accommodate that move and that she did not proceed in multiple respects—including where she and the children would reside in Illinois and what school the children would attend—in a manner consistent with representations she made leading up to the FCC's 2012 order. It further stated that its decision was "based on the fact that every major factor that the court used to make its decision to allow the petitioner to move to . . . Illinois has not taken place in the way that it was presented at the time of the original trial in this matter." The FCC specifically found that at the April 2012 hearing Shulka had provided testimony and evidence that "she wanted to move to the Lincolnshire or Deerfield area and had looked at a condo and townhome in that area."

¶ 8. On June 3, 2013, following the FCC's May 30, 2013 oral ruling on Sikraji's motion but prior to issuance of its written order, Shulka requested a de novo

---

tion instructor note the relevant "district of residence" as "JT4" and "Geneva Joint #4," respectively. We observe the Wisconsin Department of Public Instruction website does not identify a "Wood School District" in Wisconsin. *See* Public District Search, WISCONSIN DEPARTMENT OF PUBLIC INSTRUCTION, https://apps4.dpi. wi.gov/SchoolDirectory/Search/PublicDistrictsSearch (last visited Oct. 21, 2014). We construe the courts' and parties' use of the term "Wood School District" to mean the school district that contains Woods School.

hearing before the circuit court. Four days later, on June 7, 2013, Shulka also filed in Lake county, Illinois circuit court a "Motion to Enroll Foreign Judgment for Dissolution of Marriage in the Circuit Court for the Nineteenth Judicial Circuit of Lake County, Illinois," which attached the marital settlement agreement, divorce decree, and June 2012 FCC order permitting Shulka to move to Lake county, Illinois with the children, but made no reference to the FCC's oral ruling of May 30, 2013. In the motion, Shulka requested that the Illinois court "acquir[e] jurisdiction" over this family law case "and also over the parties and minor children."

¶ 9. Sikraji filed a motion in the instant proceeding seeking a ruling that Shulka had committed overtrial by filing the new action in Illinois, which required Sikraji "to defend against" both Shulka's motion for de novo review in Wisconsin and her filing in Illinois. The motion for overtrial was heard at the time of the de novo hearing.

¶ 10. The de novo hearing took place July 25 and August 9, 2013. At the conclusion of the hearing, but prior to ruling on the motion to modify judgment, the circuit court asked Shulka if she would move back to Wisconsin to retain primary placement of the children. She replied, "Yeah, I mean, if I have to move back to Wisconsin, I'll move back to Wisconsin."

¶ 11. The circuit court found that while Shulka did not intentionally disregard the June 2012 order, certain facts that the order and move were conditioned upon never came true. It then held that the June 2012 order was frustrated and Sikraji had proven that a substantial change in circumstances had occurred between the June 2012 order and the 2013 de novo hearing. The court ordered that for Shulka to retain primary placement, she must move back to Wood

School District in Walworth county, Wisconsin, and there enroll the children in either Woods or Lakeland School for the 2013–14 school year and thereafter.[3]

¶ 12. The circuit court also heard argument on Sikraji's overtrial motion, including Shulka's contention that the court had no authority to rule on the motion. The court held that it had authority to rule on the motion and that Shulka had committed overtrial. It set, and later held, a hearing for determining the appropriate amount of fees.[4]

¶ 13. Shulka appeals. Additional facts are set forth as needed.

## DISCUSSION

¶ 14. As a preliminary matter, we address an initial argument of Sikraji that Shulka "waived her right to contest the circuit court's order regarding a move back to Wisconsin, because she consented to move back to Wisconsin and the court made its decision partially on the basis of her consent." The circuit court did find at the de novo hearing that Shulka "agreed" to move back to Wisconsin and in its written order that "in response to the court's questions, [Shulka] has indicated that it is her intention on moving back [sic] . . . and resuming placement in . . . Wisconsin." If the court's finding was that Shulka *voluntarily* agreed to

---

[3] The circuit court also resolved other placement and related issues raised in Sikraji's motion to modify judgment, including weekend transfer of the children between parents, summer and holiday placement schedules, and ordering the use of the Family Wizard for communication between Shulka and Sikraji regarding the children. These issues are not before us on appeal.

[4] On appeal, Shulka does not contest the amount of fees the circuit court ultimately awarded.

move back to Wisconsin, such a finding was clearly in error and cannot stand. *See DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 583, 445 N.W.2d 676 (Ct. App. 1989) (citing WIS. STAT. § 805.17(2), noting that appellate court will reverse a circuit court's factual findings if those findings are clearly erroneous).

■

¶ 15. Shulka testified at the hearing that "[i]f the court here decides that I give up my children or I move to Wisconsin, then I guess that's what I'm gonna do. I'm gonna have to move to Wisconsin." When then asked, "[I]s that something that you're prepared to do?" Shulka responded, "I'm prepared to listen to the court, yeah." In argument to the court following testimony, the guardian ad litem pointed out the advantages of the children attending school in Walworth county instead of Illinois, but also opined that Shulka should retain primary placement. The guardian ad litem's ultimate recommendation was that the children move back to Wisconsin. When the court then asked Shulka if she would move back to Wisconsin, Shulka responded, "[I]f I have to move back to Wisconsin, I'll move back to Wisconsin. I just don't think it's in the best interest of my kids." Based on the record before us, we cannot agree that Shulka voluntarily agreed to move back to Wisconsin and thus waived her right to appeal the court's order in this regard. *See Schwantes v. Schwantes*, 121 Wis. 2d 607, 626–27, 360 N.W.2d 69 (Ct. App. 1984) (where mother "agreed" to give up custody to father when circuit court made her choose between terminating her romantic relationship and maintaining custody, we rejected father's contention that mother "voluntar[ily]" gave up custody and waived her right to challenge transfer of custody). Accordingly, we address Shulka's arguments.

*Summary of Shulka's Arguments*

¶ 16. Shulka first contends Sikraji's motion to modify judgment did not provide her with adequate notice that she could lose primary placement of the children if she did not move back to Wisconsin. She next argues that Sikraji failed to meet his burden to prove there was a substantial change in circumstances justifying the order that she move back to the Wood School District in order to retain primary placement. Relatedly, Shulka asserts that the circuit court has no authority to order her to move to Wood School District because of a Wisconsin statute limiting the authority of courts over intrastate moves of less than 150 miles, which limitation was recently clarified in *Derleth v. Cordova*, 2013 WI App 142, 352 Wis. 2d 51, 841 N.W.2d 552. Shulka further contends one of the provisions in the final written order was improper because it was not argued by the parties at the de novo hearing and, consequently, she did not have adequate notice. Finally, as to overtrial, Shulka argues that the Wisconsin circuit court did not have the authority to award attorney's fees to Sikraji related to Shulka's filing of the Illinois action.

*Notice*

██

¶ 17. Shulka argues that we should reverse the circuit court order because Sikraji's motion to modify judgment only provided notice of "minor adjustments in placement," which was not adequate notice that *primary placement* or where Shulka might be required to reside would be at issue. She relies upon *Pero v. Lucas*, 2006 WI App 112, 293 Wis. 2d 781, 718 N.W.2d 184, and

refers briefly to Wis. Stat. § 767.451(6). Section 767.451(6) provides as material that "[n]o court may enter an order for modification [of placement] until notice of the petition, motion or order to show cause requesting modification has been given to the child's parents." We review de novo whether the facts as applied to this statute demonstrate that Shulka had adequate notice, *see Fosshage v. Freymiller*, 2007 WI App 6, ¶ 6, 298 Wis. 2d 333, 727 N.W.2d 334 (2006), and conclude that the notice was adequate.

¶ 18. Sikraji's motion to modify moved the court, in relevant part:

> 1. For an order . . . modifying the placement schedule involving the parties' minor children.
>
> . . . .
>
> 3. For an order . . . clarifying the summer placement schedule to provide [Sikraji] will take his summer placement at two-week intervals on dates designated by him as opposed to a time designated by [Shulka].
>
> 4. For an order . . . setting times for the holiday placement schedule previously ordered by the court.
>
> . . . .
>
> 8. For such further relief the court may deem just and appropriate under the circumstances.

We note at the outset that despite objecting to certain testimony at the hearing on the grounds that it was beyond the scope of Sikraji's motion, Shulka never requested an adjournment of the hearing on the ground that she was unprepared due to a lack of adequate notice regarding primary placement or residency.[5]

[5] When Sikraji's counsel was soliciting testimony from Sikraji regarding the advantages of Woods School versus the Illinois school in which Shulka had placed the children, Shulka's counsel objected that such testimony was beyond "the scope of the motion." In response, the court noted that there were "three

¶ 19. As stated, in arguing that she did not have adequate notice, Shulka cites to our decision in *Pero*. *Pero* is of no help to Shulka. In that case, the mother and father, who had joint custody of their son, both filed motions seeking modifications of placement but neither requested a modification with regard to custody. *Pero*, 293 Wis. 2d 781, ¶¶ 1, 5, 6. In closing arguments at the motion hearing, the parents and guardian ad litem made suggestions regarding physical placement, but no one contended that custody should be changed. *Id.*, ¶¶ 8, 13, 24. Nonetheless, the circuit court *sua sponte* awarded sole custody to the mother. *Id.*, ¶¶ 16, 19. The father challenged this ruling, and we held, based on the relevant statutes, that "a party must file a petition, motion or order to show cause in order to empower the [circuit] court" to enact changes in legal custody or physical placement and notice of the motion must be given to the child's parents. *Id.*, ¶¶ 29–31, 33. We held that a request for a change in custody "is both factually and legally different" than a change in physical placement, and notice of a motion to modify placement was not notice of a motion to change custody. *Id.*, ¶ 31. We also stated that comments by the circuit court at the beginning of the hearing indicating that it would consider giving one party sole custody "did not give the parties time to prepare to address that issue." *Id.*

■■

¶ 20. Here, Sikraji did move the court to modify placement and did so three months prior to the FCC's hearing on the motion and five months prior to the

different requests" in the motion and "[n]umber one is asking for a court order modifying the placement schedule involving the parties' minor children," and concluded that "I think this is on the table." Shulka's counsel responded, "Okay. All right." When the court then ruled that such testimony could continue, Shulka's counsel responded with "[t]hat's fine."

circuit court's de novo hearing. His first request in the motion sought "an order . . . modifying the placement schedule involving the parties' minor children." In his affidavit that accompanied the motion, Sikraji also asserted that because Shulka actually was residing with the children in a location in Illinois closer to Sikraji than the location she had represented to the FCC at the hearing leading to the FCC's 2012 order (permitting Shulka to move to Illinois and granting her more placement time), "it would not be inconvenient for the parties to have a shared placement schedule nor would it be inconvenient for the children." Sikraji further averred that "the school [Shulka] has enrolled the children in is not capable of handling [T.S.'s] needs. The school has indicated that they would like [T.S.] transferred to a different school that would be better equipped to handle her. Splitting the children up would not be in their best interests." Thus, Sikraji's motion gave notice that Shulka's primary placement and where the children would be attending school were at issue.

¶ 21. Additionally, Shulka's request for a de novo hearing on Sikraji's motion was in response to the FCC's oral ruling at the May 2013 evidentiary hearing on that motion. The FCC's subsequent written order, issued on June 24, 2013—a month before the de novo hearing—specifically addressed the shortcomings of the Illinois school in which Shulka had placed the children for the 2012–13 school year, at least in regards to T.S. and her needs based on her severe autism. The June 2013 order directed that the children attend "either Wood[s] School or Lakeland School" in Walworth county and that Shulka move back to Walworth county in order to retain primary placement or, if Shulka did not move to Walworth county, that Sikraji relocate to Walworth county, in which case placement of the children would be shared.

654

¶ 22. The FCC's June 2013 written order left no question that primary placement, including the possibility of the circuit court requiring Shulka to move back to Wisconsin in order to maintain primary placement, was "on the table." The first day of the de novo hearing was July 25, 2013, just weeks before the start of a new school year. Shulka cannot claim she was not aware that the hearing before the circuit court might well address having the children attend Woods or Lakeland School for the 2013–14 school year and how that could be accomplished—through parental residency in the Wood School District. This is especially true in light of her own testimony at the de novo hearing that she had contacted the Wood School District prior to the hearing and was aware that there was a waiting list for students living outside the district.[6]

¶ 23. We conclude that Shulka had adequate notice that the de novo hearing would likely include consideration of a modification of primary placement, what school the children would attend, and her place of residence.

*Motion to Modify*[7]

■■

¶ 24. WISCONSIN STAT. § 767.451(1)(b) governs substantial modifications to physical placement orders that

---

[6] On the first day of the hearing, Shulka testified that she had communicated with the Woods School and was aware there was a waiting list for out-of-district students wishing to enroll in Woods School for the 2013–14 school year. Her counsel also stated on that first day that "[i]t's a matter of undisputed fact that she cannot enroll them at that schools [sic], and neither party can because neither one has a—a verifiable address" in the school district.

[7] In her brief, the guardian ad litem suggests we consider Sikraji's motion to modify judgment as a motion for reconsid-

may be sought by a parent after two years have passed from the date of the final judgment of divorce. Consistent with para. (b), a circuit court considers such modification requests using a two-step process. *Greene v. Hahn*, 2004 WI App 214, ¶ 22, 277 Wis. 2d 473, 689 N.W.2d 657. First, "whenever a requested modification 'would substantially alter the time a parent may spend with his or her child,' the moving party must show that there has been 'a substantial change of circumstances since the entry of the last order . . . substantially affecting physical placement.' " *Id.* (citation omitted). A substantial change of circumstances "requires that the facts on which the prior order was based differ from the present facts, and the difference is enough to justify the court's considering whether to modify the order." *Licary v. Licary*, 168 Wis. 2d 686, 692, 484 N.W.2d 371 (Ct. App. 1992). If the circuit court finds that there has been a substantial change in circumstances, it then moves to the second step: considering whether modification would be "in the best interest of the child." *Greene*, 277

eration under Wis. Stat. § 806.07. In reply, Shulka strongly disagrees, pointing out that Sikraji's motion "was clearly labeled a motion to modify judgment" and both she and Sikraji have briefed the issues based upon the motion to modify standard. During the de novo hearing, the circuit court at times appeared to view Sikraji's motion as one for reconsideration of the June 2012 order; however, at the conclusion of the hearing, and after Sikraji asked the court to consider his motion as one for reconsideration, the court instead applied the statutory test for a motion to modify placement. Neither party objected, and on appeal both parties treat the motion as one for modification. While certain aspects of this appeal necessarily require consideration of the 2012 FCC proceedings and order, we agree with the petitioner's and respondent's positions on appeal and review the court's decision based upon the standard for a motion to modify placement.

656

Wis. 2d 473, ¶ 22 (citation omitted). In making this determination, the court must consider factors set forth in Wis. Stat. § 767.41(5)(am), which include, as relevant, the wishes of the children's parents, the children's interaction and interrelationships with the parents and others, the quality and amount of time each parent has spent with each child, and the children's ages and developmental and educational needs. *See* §§ 767.41(5)(am)1., 3., 4., 6. and 767.451(5m). Additionally, § 767.451(1)(b)2.b. provides that "there is a rebuttable presumption that . . . [c]ontinuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child."

¶ 25. Whether a party seeking to modify an existing physical placement order has established a substantial change in circumstances is a matter of law we review de novo. *Pero*, 293 Wis. 2d 781, ¶ 23. In our review, however, "we must give weight to a [circuit] court's decision because the determination is heavily dependent upon an interpretation and analysis of underlying facts." *Id.* (citations omitted). As to the second prong, the best interest determination, "we consider whether the [circuit] court has properly considered and weighed the appropriate factors to determine what is in the [children]'s best interest[s], using the erroneous exercise of discretion standard." *Id.*

¶ 26. We agree with the circuit court that Sikraji has met his burden of proving that a substantial change in circumstances has occurred to justify a modification of the 2012 placement order. Following Shulka's and Sikraji's testimony at the de novo hearing, the circuit court stated in its written order that it was "concern[ed]

that the facts presented at the time of trial before the [FCC] that resulted in [the FCC's] decision of June of 2012 are not the facts that exist today" and that "by the actions taken by [Shulka], the original order in this matter was frustrated and that order was based on facts that did not actually come to pass."

■

¶ 27. Shulka argues that she adhered to both the letter and spirit of the FCC's June 2012 order because the order stated she was to live in "Lake County, Illinios," and she did so. We may look beyond the words of the written order, however, and consider whether "the facts on which the prior order was based differ from the present facts." *Licary*, 168 Wis. 2d at 692.

¶ 28. According to her own testimony at the de novo hearing, Shulka had testified at the April 2012 hearing before the FCC that she intended to move to the Lincolnshire/Deerfield area because of her new job there and to enroll her children in specific schools in that area. She acknowledged at the de novo hearing that, despite these representations, just weeks after the issuance of the order related to the April 2012 hearing before the FCC, she had instead moved to Round Lake, Illinois—which is approximately a half-hour closer to Sikraji's home than the Lincolnshire/Deerfield area. Consistent with her testimony at the de novo hearing, Shulka claims on appeal that she did not move where she originally indicated she would because she "had lost the deposit on the rental unit in which she had originally intended to reside." At the de novo hearing, she also testified that after she received the written order stating she could move the children to "Lake County, Illinois," she expanded her search. Shulka acknowledged at that hearing that she never informed the FCC

that she had lost the opportunity to rent the townhouse or that she in fact moved closer to Wisconsin than originally planned.

¶ 29. Related to this change in residence location, Shulka did not enroll the children in either Daniel Wright or Half Day Schools in the Lincolnshire/ Deerfield area that, according to her testimony at the de novo hearing, she had researched as part of her original request to move and about which she made representations to the FCC at the April 2012 hearing. Rather, with her move to Round Lake, Shulka instead enrolled the children in Big Hollow School, the Illinois public school near their new residence. Despite having joint custody, Sikraji's uncontested testimony at the de novo hearing was that Shulka never consulted with him regarding nor informed him of this change in schools prior to enrolling the children.[8]

¶ 30. Another factor noted in the FCC's June 2012 order as a reason to allow Shulka's move to Illinois with the children was Shulka's employment. Shulka admitted in her testimony at the de novo hearing that she was employed in the Lincolnshire area in Illinois at the time of the April 2012 hearing and that she had testified before the FCC at that hearing that she intended on moving to the Lincolnshire or Deerfield area to be close to that job. However, at the time of the de novo hearing, Shulka was employed in a different job, which was located closer to Wisconsin.

¶ 31. In addressing the substantial change in circumstances prong, the circuit court noted that it understood that things did not "pan out" as Shulka antici-

---

[8] Indeed, the uncontested testimony of Sikraji at the de novo hearing was that he had to call around to various schools in the Lake County School District before he was able to locate the school in which Shulka had placed the children.

pated during the April 2012 hearing, and it did not find that this was intentional by Shulka, but also that there was no dispute that certain facts upon which the original move was permitted were not the current facts. Reviewing the circuit court's decision de novo but giving weight to that decision, as we must, *see Pero*, 293 Wis. 2d 781, ¶ 23, we agree with the court that Sikraji has shown that there is a substantial change in circumstances under Wis. Stat. § 767.451.

¶ 32. Although Shulka does not specifically contest on appeal the circuit court's ruling that enrollment of the children in the Wood School District schools, with Shulka retaining primary placement (albeit while relocated to the Wood School District), is in the children's best interests, for completeness, we address the issue nonetheless. The circuit court found that it was in the children's best interests to be enrolled in Woods or Lakeland Schools located in the Wood School District in Wisconsin and that Shulka retain primary placement. Of specific concern was the children's special needs, particularly T.S.'s. The record bears this out as both parents testified at the de novo hearing to the children's autism and special school needs. And while Shulka testified to the strengths of the schools the children would attend if they remained in Illinois, and Sikraji agreed that these schools were attempting to address the children's needs, Sikraji testified extensively regarding the advantages of Woods and Lakeland Schools for the children and that the children previously had done well at Woods School.[9] Shulka also agreed that the

---

[9] In further support of his position that the children would be better served by the Wood School District, Sikraji testified unequivocally at the de novo hearing that if Shulka did not immediately move into the Wood School District, he would do so

children had received good grades at Woods School when they attended there and that it was a "good school."

¶ 33. The circuit court found that due to T.S.'s and C.S.'s autistic conditions, the Illinois schools the children were attending as a result of Shulka's move were not serving the children as well as the Wood School District schools could do if the children returned there. Although Shulka disputes these Wisconsin schools are better than the Illinois schools the children would otherwise be attending, there is credible evidence supporting the court's finding that it would be in the best interests of the children for them to attend the Wood School District schools, instead of the Illinois schools.[10]

if granted primary placement, so that the children would be able to attend Woods School or Lakeland School. He further testified that he and his current wife had selected a house in the district that they could immediately rent, providing them residency in the Wood School District.

[10] For example, Sikraji testified to some of the differences between Woods School, where T.S. and C.S. had previously attended, and Big Hollow School, where they attended during the 2013–14 school year. Related to T.S.'s experience, Sikraji stated:

> [A]t Big Hollow, they basically have a room for special need kids. It's about ten by twelve, and typically there's a couple of kids in there screaming or trying to escape; and they confine [T.S.] into that one room, and once in awhile, they'll move her around a little bit.

> Then, they go to the general population, and they pull her out, and put her in this room . . . . At Woods School, she had her own helper who is there every day. Sometimes, it would only be for two or three hours. But Woods School is a smaller school, and they're more tightly-knit; and she would go from . . . the one class and move to another class; had music, and then speech therapy, and some activities . . . .

> . . . .

¶ 34. The circuit court concluded that it was in the best interests of the children that they attend either

> [At Big Hollow,] [t]hey don't do as much for her . . . . She actually was doing well in school, but they don't give her any homework . . . . [M]ost of the time [the little book they have for daily events] is empty. When she comes home, she comes home with a backpack full of drawings, typically between 20 and 30 on a Friday when I pick her up. So if she's doing 30 pictures in a day, where's the teaching coming from? . . .
>
> Also, Big Hollow is a larger school. There are some more severely handicapped people in her classroom. She, to my recollection, does not get any activities time. And . . . Woods School has activities time. They focus on that. They do skiing . . . . [T.S.] would have participated in soccer this year if she were at Woods School. She may not have done much; but if you don't give her the opportunity, how do you know what she can do?
>
> . . . .
>
> At Woods School, she . . . had her own locker. She was able to participate in sporting events and . . . actually the theaters, the plays, all of that stuff. They make little parts for her separately, and band at Woods School. At Big Hollow, that's not available for her.

Sikraji added that Woods School had done a "great job" of "incorporating [both T.S. and C.S.] into extracurricular activities." He testified that T.S. would not be able to remain in her current school in Illinois because that school "couldn't handle her." He further testified that as far as a special education program goes, "[T.S.] needs to be in an area where they pay more attention to her, and . . . Lakeland has got the best program . . . in Wisconsin." Sikraji added that if she attended the planned school for T.S. in Illinois, "she'll be in a [small] room . . . with eight other children who are severely handicapped. When we toured it, there was [sic] children screaming. So I mean, I don't think it would be the best program for [T.S.]. Wisconsin, Lakeland would be the best program." Shulka provided testimony attesting to the positive attributes of the relevant Illinois schools.

Shulka very briefly complains on appeal that no expert testimony was presented which would support the circuit court's finding that the Wood School District schools would

Woods School (which is closer to Sikraji's residence and where both parents agreed the children had done well) or Lakeland School—both of which were the schools the guardian ad litem recommended—"but that primary placement remain with Ms. Shulka." In doing so, the court rationally applied the relevant considerations of WIS. STAT. § 767.41(5)(am), as required by WIS. STAT. § 767.451(5m), including the wishes of the parents, the interaction and interrelationship of the children to each parent, the amount and quality of time each parent has spent with the children, and the children's developmental and educational needs.

¶ 35. Shulka challenges the circuit court's order as giving her a "choice" beyond its appropriate authority, which was, as she states it, "either move back to the Wood School District in Lake Geneva, Wisconsin, . . . or give up primary placement of the children to Sikraji." At the time of the de novo hearing, however, the new school year was about to commence and enrollment of the children in the Wood School District schools would not have been possible at that point if the children resided outside of that district. Thus, ordering Shulka to immediately move back to the Wood School District and re-enroll the children there was the only clear means by which the court could accomplish its best-interests goals. In light of the fact that Shulka was permitted in the first instance to move to Illinois, as the circuit court stated, "conditioned on certain facts that never came true," we conclude that the court did not erroneously exercise its discretion when it modified placement to include requiring Shulka to return to

better serve C.S. and T.S. Because she fails to develop an argument related to this point, we do not address it. *See ABKA Ltd. P'ship v. Board of Review*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments).

Wisconsin and re-enroll the children in the Wood School District schools. *See Pero*, 293 Wis. 2d 781, ¶ 23.

¶ 36. Shulka also argues that the following portion of the circuit court's order should be reversed "for lack of notice" because "[t]his particular provision was not specifically argued by the parties at the hearing itself":

> 9. Based upon all of the above, . . . [Shulka] is ordered to relocate[] to . . . Wisconsin, *specifically within the Wood School District* prior to the start of the 2013–2014 school year. *The parties' minor children are to be enrolled in either Wood[s] or Lakeland School and remain in Wood[s] or Lakeland School in the future.* (Emphasis added by Shulka.)

We reject Shulka's complaint regarding this provision of the order.

¶ 37. To begin, we note that Shulka had the opportunity to, and did, file an objection to the challenged language in the proposed written order (prepared for the court by Sikraji's counsel) before the circuit court signed it. Further, there was substantial testimony at the de novo hearing regarding the advantages to the children in attending Woods School or Lakeland School versus the Illinois schools, and the circuit court specifically found that returning to the Wood School District schools was in the best interests of the children. Shulka herself testified that at the time of the de novo hearing there was a waiting list to get into Wood School District for children residing *outside* of that district. Additional testimony was presented as to the process involved if T.S. was to attend Lakeland School; i.e., T.S. must first be enrolled in another school

¶ 38. Following the close of testimony, the circuit court stated that Shulka needed to return to "Wisconsin" and "reenroll[] the children and remain[] in Wisconsin so that the children may attend either Woods School or Lakeland School for this school year and the coming school years." The court made this statement on August 9, 2013, issuing the written order on August 29, 2013. Thus, the start of the new school year was imminent. While the court referenced returning to "Wisconsin" generally, with the school year about to begin and testimony by Shulka that persons residing outside of the Wood School District were on a waiting list, to accomplish the court's goal of enrolling the children in either Woods School or Lakeland School and maintaining primary placement with Shulka, it was clear Shulka needed to move back into Wood School District in order to enroll the children in that district's schools. We conclude that Shulka had sufficient notice at the hearing that a provision similar to the one she challenges would be included in the final order.

¶ 39. Shulka next asserts that the court's order directing her to relocate to the Wood School District in order to maintain primary placement must be reversed based on our decision in *Derleth*, 352 Wis. 2d 51, and our supreme court's decision in *Groh v. Groh*, 110 Wis. 2d 117, 327 N.W.2d 655 (1983). Shulka does not challenge the circuit court's authority to order her to move back to *Wisconsin* as a condition of maintaining primary placement of the children, but argues that "the court cannot limit her choice of residence" to the Wood School District.

¶ 40. Considering *Derleth* and *Groh*, as Shulka points out, the issue before the supreme court in *Groh*

was whether a circuit court could condition the mother's retention of custody of the children on her agreement to move from Rhinelander, Wisconsin, to a location within fifty miles of the father's Milwaukee home. *Groh*, 110 Wis. 2d at 118–19. The court concluded "on the facts in this record" that the circuit court "lacked the power to order the mother to move or lose custody." *Id.* at 126. In *Derleth*, we held that "*Groh* is still good law," subject to the expanded authority under Wis. Stat. § 767.481(1)(a) (enacted subsequent to the *Groh* decision), which granted courts "expanded authority ... over intrastate moves of 150 or more miles." *Derleth*, 352 Wis. 2d 51, ¶ 15.

¶ 41. We conclude that *Groh* and *Derleth* do not control this case due to the unique fact situation here. To begin, neither *Groh* nor *Derleth* say anything about a situation where a circuit court is ordering a parent to move *to* Wisconsin, and Shulka does not address that issue. More importantly, however, the facts in both *Groh* and *Derleth* were that the circuit court was making an *initial* decision ordering the mother to establish or maintain residency closer to the father. *Groh*, 110 Wis. 2d at 119–21; *Derleth*, 352 Wis. 2d 51, ¶¶ 5–6. In this case, however, the circuit court's decision ordering Shulka to *move back* to the Wood School District was made in the context of the initial approval of her move to Illinois and the fact that the approval, as the circuit court noted, "was conditioned upon certain facts that never came true" and that the FCC's 2012 order, which was based on Shulka's represented facts, was "frustrated." Although Sikraji's motion was filed as a motion to modify instead of a motion for reconsideration, the circuit court was also appropriately considering the FCC's initial order approving Shulka's move to Illinois in light of Shulka's representations to the FCC,

which she never brought to fruition. Further, with a waiting list for *out-of-district* children to enroll in Woods School and the new school year about to begin when the de novo hearing concluded on August 9, 2013, Shulka never suggested to the circuit court (or us) how else the court could have accomplished its best-interests-of-the-children goals of getting the children into the Wood School District schools to properly address their autistic and educational needs and maintaining primary placement with Shulka. Based on the unique facts of this case, the court did not err in ordering that the children be re-enrolled in the Wood School District schools and that Shulka return to that district so their enrollment could be accomplished while continuing their primary placement with her.

¶ 42. Unless Shulka relocated to the Wood School District in the short time remaining before the start of the 2013–14 school year, one of the circuit court's best-interests-of-the-children goals would be sacrificed. The court fashioned a remedy to address a situation created by Shulka when she did not follow through in the manner she represented to the FCC in 2012, and it was attempting to return the children to the stable school and family environment they enjoyed before Shulka made those representations. The court can hardly be criticized for this.[11]

---

[11] We note that while the circuit court ordered Shulka to re-establish residency in the Wood School District within the remaining weeks before the start of the 2013–14 school year, consistent with *Derleth v. Cordova*, 2013 WI App 142, 352 Wis. 2d 51, 841 N.W.2d 552, *Groh v. Groh*, 110 Wis. 2d 117, 327 N.W.2d 655 (1983), and Wis. Stat. § 767.481(1)(a), the order does not preclude Shulka from subsequently moving elsewhere, so long as the "children . . . remain in Wood[s] or Lakeland School in the future."

*Overtrial*

¶ 43. Shulka filed an action in Illinois asking the Illinois courts to "acquir[e] jurisdiction" over this family law case just four days after moving for de novo review in Walworth county circuit court of the FCC's May 2013 oral decision. Sikraji subsequently moved for attorney's fees on the ground that Shulka committed overtrial. The circuit court agreed with Sikraji and ordered Shulka to pay fees.

¶ 44. On appeal, Shulka does not dispute the amount of overtrial fees the circuit court awarded or that her initiation of the Illinois action was unreasonably excessive. Rather, her sole argument is that the court "lacked authority to impose any sanctions on her" because the excessive litigation occurred in an Illinois court, not in the Walworth county court. Whether a court has the authority to award attorney's fees for overtrial is a question of law we review independently. *Zhang v. Yu*, 2001 WI App 267, ¶ 11, 248 Wis. 2d 913, 637 N.W.2d 754. We conclude that the circuit court had the authority to award the fees.

¶ 45. As we noted in *Zhang*, "[o]vertrial is a doctrine developed in family law cases that may be invoked when one party's unreasonable approach to litigation causes the other party to incur extra and unnecessary fees." *Id.*, ¶ 13; *see also Johnson v. Johnson*, 199 Wis. 2d 367, 377, 545 N.W.2d 239 (Ct. App. 1996) ("The policy underpinning an overtrial attorney's fees award is to compensate the overtrial victim for fees unnecessarily incurred because of the other party's litigious actions."). In that case, Zhang appealed the circuit court's award of overtrial fees related to his appeal of a decision of the

circuit court. *Id.*, ¶ 1. Zhang argued that a circuit court's authority to sanction a party for overtrial was limited to the awarding of fees related to proceedings in the circuit court and that the circuit court did not have the inherent authority to award fees for overtrial related to an appeal. *Id.*, ¶¶ 11, 14. We disagreed, observing that "overtrial is a common law doctrine which arises from the court's inherent authority to manage the family law cases over which it has jurisdiction." *Id.*, ¶ 22.

¶ 46. In the case before us, the Walworth county circuit court unquestionably had jurisdiction over Shulka and Sikraji's family law case. Shulka recognized this, as she filed her request for a de novo hearing following the FCC's oral ruling. While Shulka may have filed her challenged action in Illinois, it involved the same parties and the same family law case over which she asked the Wisconsin court to continue exercising jurisdiction.

¶ 47. In support of her position, Shulka cites to our decision in *State ex rel. Godfrey & Kahn, S.C. v. Circuit Court for Milwaukee County*, 2012 WI App 120, 344 Wis. 2d 610, 823 N.W.2d 816. *Godfrey & Kahn, S.C.* does not assist her. That case dealt with prelitigation legal advice given by the Godfrey & Kahn law firm to the defendant in the underlying case. *Id.*, ¶ 3. We held that the circuit court lacked the inherent authority to sanction the firm because the challenged conduct "occurred before the court's jurisdiction was invoked" and did not fall within "the three areas in which such authority is generally exercised: 'to guard against actions that would impair the powers or efficacy of the courts or judicial system'; 'to regulate the bench and bar'; and 'to ensure the efficient and effective function-

ing of the court, and to fairly administer justice.' "[12] *Id.*, ¶¶ 41, 45 (citation omitted). The case before us differs. Here, the Walworth county circuit court has had jurisdiction over this family law case since Shulka's filing of the petition for divorce in August 2006 and had such jurisdiction at the time Shulka filed her action in Illinois, which was a direct challenge to the Walworth county circuit court's jurisdiction. Importantly, Shulka filed her Illinois action just four days after she moved the Walworth county circuit court for a de novo hearing of the FCC's May 2013 oral decision, an act that specifically invoked the jurisdiction of the Walworth county circuit court.

¶ 48. At the hearing on the overtrial issue, and in response to Shulka's assertion that the Wisconsin and Illinois cases are separate and unrelated, the circuit court stated:

> I agree it is a separate case, but it's not as though they have a family case up here and a small claims action against each other down there over the repair of an automobile. They are intrinsically related. And it is the very fact that they were related that I'm making the finding that . . . [Shulka] has engaged in overtrial.

We agree with the reasoning of the circuit court. As the circuit court observed, the two legal matters were "intrinsically related." Further, Shulka's own counsel

_____

[12] We further note that Godfrey & Kahn also was not a party to the underlying suit, unlike Shulka and Sikraji who were parties to both the Walworth county case and the Illinois case. *State ex rel. Godfrey & Kahn, S.C. v. Circuit Court for Milwaukee Cnty.*, 2012 WI App 120, ¶ 1, 344 Wis. 2d 610, 823 N.W.2d 816. Godfrey & Kahn argued that the circuit court lacked personal jurisdiction over the law firm; however, we did not reach that issue because we resolved the case based upon the court's lack of inherent authority. *Id.*, ¶ 30 n.6.

essentially acknowledged the interrelationship of the two actions when he stated at the overtrial/de novo hearing that Shulka's Illinois action "should never have been filed."

■■

¶ 49. As we have previously held, "[a] party's approach to litigation is unreasonable if it results in unnecessary proceedings," and the sanction of ordering "that party to pay the opposing party's attorney fees" furthers the objective of "deterring unnecessary use of judicial resources" while "providing compensation to the overtrial victim for fees unnecessarily incurred." *Zhang*, 248 Wis. 2d 913, ¶ 13. Here, we cannot ignore the timing of Shulka's filing of her Illinois action—just eight days after the FCC pronounced its May 2013 oral decision adverse to her. This timing, coupled with the fact that she mentions in her Illinois filing the FCC's 2012 order allowing her to move to Illinois but fails to mention the FCC's adverse oral decision rendered just days before her Illinois filing, suggests Shulka may have filed the Illinois action in a strategic attempt to avoid having to comply with the FCC's ruling. Yet, at the same time, she was trying to avoid the impact of that ruling through de novo review in Wisconsin. *See DeMarco v. Keefe Real Estate, Inc.*, No. 2012AP1933, unpublished slip op. ¶ 39 (WI App Dec. 27, 2013) (granting to insured an award of attorney's fees and costs where insurer's filing of an Illinois lawsuit seeking a no-coverage determination suggested "gamesmanship"). We conclude that Shulka's attempt to have the Illinois court take over jurisdiction of this family law case at the same time she was seeking relief through the Walworth county circuit court's continuing jurisdiction was unreasonable and an unnecessary use of judicial

resources that forced Sikraji to incur attorney's fees he should not have had to incur.

¶ 50. The circuit court correctly found the Wisconsin and Illinois family law actions to be "intrinsically related." Because of this relationship, we conclude the circuit court had the authority to order Shulka to pay Sikraji's reasonable attorney's fees incurred in defending against the Illinois action.

*By the Court.*—Orders affirmed.