COURT OF APPEALS
DECISION
DATED AND FILED

December 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1558**

STATE OF WISCONSIN

Cir. Ct. No. 2015FA326

IN COURT OF APPEALS
DISTRICT III

---

SARAH YACOUB F/K/A SARAH SLICE,

    PETITIONER-APPELLANT,

  V.

STEVEN RYAN PEDRINI,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for St. Croix County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Sarah Yacoub, pro se, appeals an order denying her motion to modify legal custody and physical placement of minor children that she

shares with Steven Ryan Pedrini. Yacoub argues that the circuit court erred by failing to consider relevant factors when deciding her motion. She also argues that the children's guardian ad litem (GAL) failed to "follow the law" and that, as a result, the court violated her right to due process by relying on the GAL's recommendations. We reject Yacoub's arguments and affirm.[1]

## BACKGROUND

¶2 Yacoub and Pedrini were divorced in California in 2015. The divorce judgment provided that upon the parties' anticipated move to the Hudson, Wisconsin, area, they would "maintain" joint legal custody and equal physical placement of their two minor children, with a 2-2-3 placement schedule. The divorce judgment also provided that "the children will attend the public schools nearest [Yacoub's] residence provided she remains in Hudson, WI, unless otherwise agreed to in writing by the parties."

¶3 The parties and children subsequently moved to Wisconsin, as anticipated, and their divorce judgment was registered in St. Croix County in September 2015. Over the years, two additional orders affecting physical placement were entered. Namely, in July 2016, a family court commissioner entered an order adopting the parties' proposed holiday placement schedule. In December 2016, the court commissioner entered an order, upon the parties'

---

[1] In a single paragraph at the end of his response brief, Pedrini asks this court to "award him attorney fees of $5,000.00, as well as his costs and expenses, in this appeal, due to Yacoub's frivolous framing, nature and inaccurate representations." "[P]arties wishing to raise frivolousness must do so by making a separate motion to the court, whereafter the court will give the parties and counsel a chance to be heard." *Howell v. Denomie*, 2005 WI 81, ¶19, 282 Wis. 2d 130, 698 N.W.2d 621. "[A] statement in a brief that asks that an appeal be held frivolous is insufficient notice to raise this issue." *Id.* Pedrini has not filed a separate motion for costs on the grounds that this appeal is frivolous. Accordingly, we will not address this issue further.

stipulation, continuing their 2-2-3 placement schedule but "swap[ping]" the days of the week on which each parent had placement. The December 2016 order also addressed placement during the Thanksgiving holiday, discontinuation of "mandatory placement swaps" between the parties, each party's ability to obtain passports for the children, and placement on specific dates in March and April 2017. Several years later, on October 31, 2022, the parties filed a stipulation regarding holiday placement and vacations.

¶4      On February 21, 2023, Yacoub filed a motion to change legal custody, apparently seeking either sole legal custody of the parties' children or joint legal custody "with [Yacoub] having decision[-]making authority on educational decisions." In particular, Yacoub sought permission for the parties' older child to attend a specialized math and science middle school in Minnesota for the 2023-24 school year. Yacoub represented that, for the child to be eligible to attend that school, Yacoub would need to establish a Minnesota address by August 2023.

¶5      On March 22, 2023, the circuit court appointed a GAL for the parties' children. In May 2023, the GAL filed her report, which recommended that the parties continue to share joint legal custody of the children and that their older son remain enrolled in the River Falls School District. After receiving the GAL's report, Yacoub withdrew her pending motion. She asserted that the GAL's report was "contrary to evidence provided to the [GAL]," but that she would not "put the [c]ourt in a position to have to go against the recommendations of the [GAL] to grant the pending motion[]."

¶6      Thereafter, on May 26, 2023, Yacoub filed a new motion to modify legal custody and physical placement. This time, Yacoub sought sole legal

custody of the children and also sought to modify physical placement, "while maintaining 50/50, to facilitate the children's educational needs as determined by the [c]ourt." The motion was premised, in part, on Yacoub's desire for both children to attend the specialized math and science middle school in Minnesota.[2] To facilitate their attendance at that school, Yacoub asked to "rotate the current 50/50 placement schedule to accommodate [Pedrini's] custodial limitations, such that his days primarily fall on days where there is no school to alleviate his fears about driving and[/]or missed time."

¶7 On June 6, 2023, Pedrini filed his own motion to modify legal custody, seeking sole legal custody of the parties' children. The motion was based on an alleged "substantial change in circumstances" and the parties' "demonstrated inability to agree on major decisions."

¶8 Both parties subsequently submitted position statements to the circuit court. With respect to physical placement, Yacoub's position statement asserted that despite the 2-2-3 placement schedule imposed by the divorce judgment, the parties "currently use a week on/week off custodial schedule with a holiday/vacation schedule molded to the week on/week off rotation." Yacoub proposed that if the parties' older child were enrolled at the specialized middle school in Minnesota, the parties could "continue week on/week off" placement, with the understanding that Yacoub would pick the older child up from Pedrini's home at 8:30 a.m. on school days and transport him to school and would return the child to Pedrini's home at 4:30 p.m.

---

[2] According to Yacoub, if the parties' older child were enrolled in that school, their younger child would also be permitted to enroll once he reached middle school age.

4

¶9      In his position statement, Pedrini cited concerns regarding his ability to transport the parties' oldest child to the specialized middle school in Minnesota. He also expressed concern about Yacoub's "unilateral decision" to sign the child up for that school "without discussing the same with him first." Based on the parties' "inability to discuss major decisions jointly and make those decisions jointly," he asked the circuit court to award him "sole legal decision making on medical and educational decisions."

¶10     On July 19, 2023, the GAL filed her report regarding the children's best interest, which referenced the prior report that she had filed in May 2023. With respect to legal custody, the GAL recognized that the parties "have clear communication issues" and have both "enrolled the children in activities, school lotteries, and extracurricular activities without informing the other party," which has created "tension" for the children. The GAL therefore recommended "that the parties learn how to communicate by enrolling in parenting classes with a professional" or that "a parent coordinator could be appointed to make deci[si]ons for the parties in the event of disagreement." The GAL concluded, however, that there was "no evidence to support a finding of sole legal custody under [WIS. STAT. §] 767.41(2) [(2021-22)]."[3] As for physical placement, the GAL recommended "that the children remain with the current placement schedule and continue to attend schools in the River Falls School District."

¶11     The circuit court held an evidentiary hearing on the parties' respective motions on July 26, 2023. An oral ruling followed on August 1, 2023.

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

In its oral ruling, the court concluded that Yacoub had failed to show a substantial change in circumstances, as required to modify legal custody or physical placement. Nevertheless, the court then concluded that, even assuming a substantial change in circumstances had occurred, the parties' proposed modifications to legal custody and physical placement would not be in the children's best interest.

¶12     Yacoub moved for reconsideration, arguing that the circuit court's decision to "continue the status quo" was inadequate because

> [t]he only other order on placement, custody, and education is from the time of the divorce. Our current holiday schedule is by stipulation and not a court order. The placement schedule at the time of the divorce was 2-2-3. According to the only order we have, our children are to attend school in Hudson. The court asked what was the substantial change in circumstance since the last order on custody and placement. Answer: the addition[] of two children for [Yacoub], one additional child for [Pedrini], [Pedrini] deciding to move to River Falls knowing [Yacoub] was in Hudson, [Yacoub] working in the Twin Cities, [and Pedrini and Yacoub] being unable to co-parent.

Yacoub therefore asked the court to "order a specific placement schedule and adopt [the parties'] holiday/vacation stipulation of November 2022 by reference into the order."

¶13     Pedrini filed a response to Yacoub's reconsideration motion, asserting that Yacoub had not alleged that the circuit court made a manifest error of fact or law in denying her motion to modify legal custody and physical placement. Pedrini also asserted that, although Yacoub's reconsideration motion attempted to introduce "new" evidence, none of that evidence was "newly discovered," as it was available to Yacoub prior to the evidentiary hearing.

¶14    On August 16, 2023, the circuit court entered a written order denying Yacoub's motion to modify legal custody and physical placement, denying Pedrini's motion for sole legal custody, and denying Yacoub's motion for reconsideration.  Yacoub now appeals.

## DISCUSSION

### I.  Modification of legal custody and physical placement

¶15    Once two years have elapsed since the entry of a final judgment determining legal custody or physical placement, a circuit court may modify legal custody or physical placement if it finds that: (1) the modification is in the best interest of the child; and (2) there has been a substantial change in circumstances since the entry of the last order affecting legal custody or physical placement. WIS. STAT. § 767.451(1)(b)1.

¶16    "Whether there is a substantial change in circumstances is a mixed question of law and fact." *Abbas v. Palmersheim*, 2004 WI App 126, ¶8, 275 Wis. 2d 311, 685 N.W.2d 546.  "The circuit court's findings of fact regarding an alleged change of circumstance since the last custody and placement order will not be disturbed unless clearly erroneous," but the ultimate determination of whether a substantial change in circumstances has occurred is a question of law. *Id.*

¶17    If a party establishes a substantial change in circumstances, the circuit court must exercise its discretion to determine whether a modification of legal custody or physical placement would be in the child's best interest. *Pero v. Lucas*, 2006 WI App 112, ¶¶22-23, 293 Wis. 2d 781, 718 N.W.2d 184.  A court erroneously exercises its discretion when it "does not examine the relevant facts,

7

applies the wrong legal standard, or fails to use a demonstrated rational process to reach a reasonable conclusion." *Id.*, ¶40 (citation omitted).

¶18     When determining whether a proposed modification of legal custody or physical placement would be in the child's best interest, a court must consider the factors set forth in WIS. STAT. § 767.41(5)(am). *Shulka v. Sikraji*, 2014 WI App 113, ¶24, 358 Wis. 2d 639, 856 N.W.2d 617. There is a rebuttable presumption that continuing the current allocation of decision-making under a legal custody order is in the child's best interest. WIS. STAT. § 767.451(1)(b)2.a. In addition, in a case where the parties have substantially equal periods of physical placement, there is a rebuttable presumption that substantially equal periods of physical placement are in the best interest of the child. Sec. 767.451(2)(b).

¶19     On appeal, Yacoub first asserts that the circuit court erred by concluding that no substantial change in circumstances had occurred since the entry of the last order or judgment affecting legal custody and physical placement. We need not address this issue, however, because we decide appeals on the narrowest possible grounds. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707. Here, while the court determined that no substantial change in circumstances had occurred, it went on to conclude that, even assuming there was a substantial change in circumstances, the parties' proposed modifications to legal custody and physical placement would not be in the children's best interest. As discussed below, we conclude that the court did not erroneously exercise its discretion in that regard. Consequently, the court properly denied Yacoub's motion to modify legal custody and physical placement on that basis, and we need not address Yacoub's argument regarding the existence of a substantial change in circumstances.

¶20     As noted above, when determining whether a proposed modification of legal custody or physical placement would be in the child's best interest, a court must consider the factors set forth in WIS. STAT. § 767.41(5)(am). In this case, the circuit court's oral ruling shows that it appropriately considered the statutory factors.

¶21     First, the circuit court noted that the "wishes of the parents" were "pretty clear." *See* WIS. STAT. § 767.41(5)(am)1. Specifically, the court referenced the GAL's report, which recognized that the parties were on "opposite ends of the spectrum" regarding their older child's school enrollment, with Yacoub believing that it was in the older child's best interest to attend the specialized middle school in Minnesota, and Pedrini believing that both children should continue attending school in River Falls.

¶22     Next, the circuit court considered the wishes of the children. *See* WIS. STAT. § 767.41(5)(am)2. The court acknowledged that there was a "conflict" in the evidence regarding the children's wishes, as communicated by Yacoub and by the GAL. At the evidentiary hearing, Yacoub testified that the children strongly wanted to attend the specialized middle school in Minnesota because they were bored in their current school, particularly with respect to the math curriculum.

¶23     The GAL, however, cast doubt on Yacoub's testimony about the strength of the children's desire to attend the specialized middle school. The GAL's report explained:

> When speaking with [the older child] in May 2023, he noted that he wanted to go to [the specialized school]. When asked what he liked about the idea of going to [the specialized school], he said "because it is closer to Vikings games." He was not able to give any other reason as to

9

> why he wanted to attend [the specialized school]. He reported liking [his current] school, which is where this discussion first took place, and he reported that he had a nice friend group.
>
> As this matter has progressed, [the older child] has been able to give more input about possibly attending [the specialized school]. [The older child] reported that he is "bored" in math and that he "isn't challenged." Yet, when asked if he had ever done any special math at [his current school] he reported that in 4th grade he participated in "Math Masters." He noted he was not selected for 5th grade, but that was because "it was too political."

In her argument to the circuit court, the GAL reported that while Yacoub had characterized the parties' older child as "desperately" wanting to attend the specialized middle school, "that was not relayed [to the GAL]" during her four meetings with the children. Based on her meetings with the children, it was the GAL's impression that their alleged desire to attend the specialized school was "more of a parent's wish than a child's wish."

¶24 The circuit court acknowledged this conflicting evidence regarding the children's wishes during its oral ruling. Ultimately, the court noted that the children—who were "going into 6th … and 4th grade," respectively—were likely "too young to really appreciate the whole picture of what would be going on" if they changed schools.

¶25 The circuit court next addressed the children's interactions and interrelationships with their parents, stepparents, and with their siblings in both households. *See* WIS. STAT. § 767.41(5)(am)5.-6. The court noted that the children were well adjusted to both homes, had good relationships with their stepparents and siblings in both homes, and enjoyed "good activities" in each home. The court reasoned that this factor favored maintaining the "status quo" because it would not "be good for the kids or fair to Mr. Pedrini to pull the rug out

from him given all of the … effort that he's made to continue to be involved in the children's lives."

¶26 Turning to the children's adjustment to their home, school, religion, and community, *see* WIS. STAT. § 767.41(5)(am)8., the circuit court noted that no evidence had been presented regarding religion, but the evidence showed that the children were "adjusted to the community" and had friends at school. The court further stated it could not "sit here and say that this would be harmful to a 6th grader to go to public school in River Falls, Wisconsin." To the extent Yacoub had presented evidence about poor reading proficiency in the River Falls schools, the court observed that "[t]here are other ways to improve a child's reading" outside of school.

¶27 Next, the circuit court noted that it had already "touched on" the children's ages and their developmental and educational needs. *See* WIS. STAT. § 767.41(5)(am)9. The court then stated that the next statutory factor—i.e., "[w]hether the mental or physical health of a party, minor child, or other person living in a proposed custodial household negatively affects the child's intellectual, physical, or emotional well-being," *see* § 767.41(5)(am)10.—was "not a factor" in this case.

¶28 The circuit court next addressed the need for regularly occurring and meaningful periods of physical placement and the availability of childcare

11

services.[4]  The court found that the children currently "have that time with both parents," which is "really important" and "should continue."  The court also found that the availability of childcare was not "really a big issue."

¶29  The circuit court also considered the "cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party."  *See* WIS. STAT. § 767.41(5)(am)3.  The court acknowledged the parties' difficulty in communicating with one another.  It cited the parties' "different personalities, different priorities, different points of view[], different perspectives, [and] different way[s] of looking at things."  The court concluded, however, that the parties' communication and cooperation were not "broken down to the point where the [c]ourt should take away joint legal custody and give sole legal custody to just one or the other."  The court cited the "presumption of joint legal custody … particularly with two parents that are good parents," and it urged the parties to explore ways to "work together better, work through some of these decisions in a way that isn't so stressful."

---

[4] In addressing these factors, it appears that the circuit court was referring to a previous version of WIS. STAT. § 767.41(5)(am).  *See* § 767.41(5)(am)8.-9. (2019-20).  The statute was amended in 2021 to remove these factors from the list of factors that a court "shall" consider in making custody and placement determinations.  *See* 2021 Wis. Act 37, § 3.  The effective date of the amendments was December 1, 2021, *see* 2021 Wis. Act 37, § 8, which was well in advance of the court's oral ruling in this case on August 1, 2023.

Nevertheless, the current version of the statute permits a court to consider "[a]ny other factor that the court determines to be relevant."  WIS. STAT. § 767.41(5)(am)14.  Thus, the circuit court could, in its discretion, consider factors that were removed from the statute in 2021, to the extent the court believed that those factors were relevant to its decision.  The statutory amendment simply means that the court was no longer required to consider those factors.

¶30     Addressing the communication factor elsewhere in its decision, the circuit court faulted both parents for failing to communicate with each other. The court cited one example where Yacoub had the children vaccinated without Pedrini's permission and another example where Pedrini enrolled the children in Boy Scouts without consulting Yacoub. The court also cited an instance when the parties disagreed about appropriate orthodontic treatment for one of their children. The court agreed with the GAL that the parties "have a very different communication style." Nevertheless, the court emphasized "the stability that there has been for these kids" and the fact that both parties "have been good parents and both want what's best for their children." Under these circumstances, the court concluded that the parties' difficulties in communicating with one another did not provide a basis to award either party sole legal custody.

¶31     Next, the circuit court found that both parties "can support the other party's relationship with the children." *See* WIS. STAT. § 767.41(5)(am)4. Finally, the court stated that there was no evidence of any abuse or neglect, of interspousal battery or domestic abuse, of any "significant problems with drugs or alcohol," or evidence that any party or person residing with the children had a criminal record. *See* § 767.41(5)(am)7., 11.-12.

¶32     Beyond the statutory factors, the circuit court specifically addressed the parties' dispute about their older child's enrollment in the specialized middle school. The court stated that there would likely be no dispute about the older child attending that school if it were located in River Falls. The court acknowledged, however, that there were significant issues related to the logistics of transporting the child to Minnesota for school on a daily basis.

¶33 Ultimately, the circuit court's oral ruling shows that the court examined the relevant facts, applied the appropriate standard of law, and used a rational process to reach a reasonable conclusion that the proposed modifications of legal custody and physical placement would not be in the children's best interest. *See Pero*, 293 Wis. 2d 781, ¶40. As such, we cannot conclude that the court erroneously exercised its discretion by denying Yacoub's motion to modify legal custody and physical placement.

¶34 On appeal, Yacoub argues that the circuit court failed to adequately consider various factors, namely: (1) the "geographic separation and accommodations of [Yacoub's] household"; (2) the children's wishes regarding school enrollment, as relevant to legal custody; (3) Pedrini's interference with the children's relationships with their maternal grandparents; (4) the children's developmental and educational needs, which, according to Yacoub, will be better served by the specialized middle school in Minnesota than by their local schools in River Falls; (5) a pattern of evidence showing Pedrini's unreasonable refusal to communicate or cooperate with Yacoub; (6) a pattern of evidence showing Pedrini's inability to support, or unreasonable interference with, the children's relationship with Yacoub; (7) Pedrini's lack of credibility, as demonstrated by his "evasive, argumentative, and non-responsive" demeanor on the witness stand; and (8) "unrefuted" evidence that Pedrini "harbors the same hostility to [Yacoub] in the present that he had [ten] years ago at the time of the divorce."

¶35 In essence, Yacoub's arguments ask us to make factual findings that the circuit court did not make, to reassess the court's credibility determinations, to reweigh the evidence, or to reweigh the various factors to give additional weight to those that favor Yacoub's position. Our role on appeal, however, is to determine whether the circuit court erroneously exercised its discretion, not to substitute our

own discretion for that of the circuit court. *See* ***State v. Rhode***s, 2011 WI 73, ¶26, 336 Wis. 2d 64, 799 N.W.2d 850. Yacoub presented evidence to the circuit court regarding the factors that she now claims the court failed to adequately consider. The fact that the court did not adopt Yacoub's position does not demonstrate that the court failed to consider Yacoub's evidence or arguments regarding those factors. In all, the court provided a rational explanation for its decision regarding legal custody and physical placement, and Yacoub has failed to show that the court erroneously exercised its discretion.[5]

## II. Due process

¶36 Yacoub also argues that the circuit court violated her right to due process. More specifically, she contends that the GAL "failed to follow the law" in various ways, and that the court therefore violated her right to due process by relying on the GAL's report.

¶37 Yacoub's due process argument is undeveloped. Yacoub acknowledges that due process requires notice and an opportunity to be heard. *See* ***Sweet v. Berge***, 113 Wis. 2d 61, 334 N.W.2d 559 (Ct. App. 1983). Yacoub does not dispute that she had notice of the GAL's report, or that she had an opportunity to be heard regarding any concerns that she had about the report. To the extent Yacoub believes that the circuit court should not have relied on the report based on any of the alleged deficiencies set forth in her appellate briefs, her argument essentially challenges the court's exercise of discretion in deciding how much

---

[5] Yacoub's appellate briefs do not separately address the circuit court's denial of her motion for reconsideration. Any argument that the court erred by denying the reconsideration motion is therefore deemed abandoned. *See* ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

weight to give to the report when making its determination of the children's best interest. Yacoub does not explain how the court's alleged error in relying on the report rose to the level of a constitutional violation, nor does she cite any legal authority directly supporting her claim that the court's reliance on the report violated her constitutional right to due process. This court need not address arguments that are undeveloped or unsupported by references to legal authority, *see **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992), and we decline to do so here.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.